[Civ. No. 1240.  Third Appellate District.—June 5, 1914.]

## C. F. CARR et al., Appellants, v. THOMAS KING et al., Respondents.

LANDLORD AND TENANT—INTERPRETATION OF LEASE—DEMISE OF PORTION OF TRACT—COVENANT NOT TO DEMISE OTHER PORTIONS FOR LIKE PURPOSES.—A provision in a lease of two acres of a tract embracing one thousand acres for hotel and summer resort purposes, that the lessors "will not demise or let any other part of their said premises to be used for like purposes as those herein let to the said party of the second part, and that they will not grant similar rights and privileges upon their said premises to any other persons as those granted to the said party of the second part herein," is not violated by the sale, during the existence of the lease, of portions of the one thousand acre tract to others, who thereafter conduct the same character of business on the purchased premises as that conducted by the lessees.

ID.—MEANING OF WORD "DEMISE"—WHETHER INCLUDES "SELL" OR "CONVEY."—In such case the word "demise," coupled by the disjunctive conjunction "or" to the word "let," does not preclude the lessor's right to convey or sell his remaining property for any or all purposes whatsoever.  The word "demise" used as a noun, means a lease for a term of years; a conveyance in fee, for life or years; the conveyance of an estate, either in fee or for life or for years, most commonly the latter.  As a verb it means to lease for a term of years.

ID.—INTENTION OF PARTIES—EXTRINSIC EVIDENCE.—The intention of the parties must be gathered from the consideration of the lease itself, if it is fairly expressed therein, and no extrinsic evidence is admissible to show their intention.

ID.—INTERPRETATION OF LEASE—PRESUMPTION IN FAVOR OF LESSEE.—In such a lease no presumption in favor of the lessee can be indulged, since restraint in alienation of realty is not favored by the law.

ID.—ACTION FOR BREACH OF COVENANT—SUFFICIENCY OF COMPLAINT TO WARRANT REVISION.—In an action by the lessee for breach of such restrictive covenant in the lease, allegations in the complaint that the words employed in the covenant were, by "mutual consent of all parties thereto, distinctly understood" to mean that the lessors "would not let, demise or grant to any other person" the right to carry on a summer resort on the "larger tract of one thousand acres," do not justify a revision of the lease under section 3399 of the Civil Code.  To state a case for the revision of a written instrument under that section, it is incumbent upon the pleader to show,

by direct averment, that, by reason of fraud practiced by one of the parties, or of the mutual mistake of one of them, which the other at the time knew or suspected, there were thus omitted from the instrument certain material terms and conditions, or, in other words, that the language of the writing failed, for some reason, to express the intention of the parties.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmett Seawell, Judge.

The facts are stated in the opinion of the court.

J. A. Barham, Phil Ware, and J. H. S. Bartholomew, for Appellants.

Thomas J. Geary, for Respondents.

HART, J.—The object of this action is to recover, as damages, the sum of thirty-five thousand dollars, for two alleged breaches by the defendants of a certain covenant of a written lease executed by the latter and the plaintiff, M. A. Carr.

The facts are: That on the seventeenth day of May, 1901, the defendants, by writing, leased to the plaintiff, M. A. Carr (wife of the plaintiff, C. F. Carr), about two acres of a tract of land embracing about one thousand acres, situate on Russian River, in Sonoma County, for the term of one year from the first day of January, 1902, at the yearly rental of three hundred and fifty dollars, with an option in the lessee, upon the expiration of the term of the lease as above stated, to renew said lease from year to year thereafter for the period of nine years, at the same rental and upon the same conditions as are specified in said written lease.

The property so leased was to be used by the plaintiffs, and has been so used by them during all the time since the making of said lease, for the purpose of conducting the hotel business and a summer resort thereon. By the lease, the plaintiffs were granted the privilege of cutting and removing from the premises of the defendants, during the continuance of the lease, all firewood necessary to conduct and run said business. It was also covenanted that the defendants "shall, during the term of this lease, furnish to the said party of the second part

row-boats, with their necessary oars and row-locks; and that the said party of the second part shall have the right and privilege, during the continuance of this lease, of placing and using such other boats as she may see fit in the waters upon said premises.'' The right to use all rights-of-way over the premises of the defendants and over all other lands owned by them, was granted by the lease, as was likewise the right to permit the guests and patrons of the plaintiffs to use the premises of the defendants, where not inclosed, for pleasure walks and recreation.

The lease further provided: ''It is further agreed and fully understood that the said parties of the first part will not demise or let any other part of their said premises to be used for like purposes as those herein let to the said party of the second part, and that they will not grant similar rights and privileges upon their said premises to any other persons as those granted to the said party of the second part herein.''

The complaint is in two counts, and each alleges the breach by the defendants of the foregoing covenant of the lease as follows: ''That on the 21st day of February, 1910, and while the said lease and agreement was in full force and effect as aforesaid, and while the said plaintiff, M. A. Carr, was in the occupancy of the premises, leased as aforesaid, and thereon conducting a hotel, saloon, summer resort, and like business, the defendants, in violation of the said covenant of their said contract, made, executed and delivered to F. M. Bent, C. W. Eckstein, M. T. Plant and M. Smyth, a grant, bargain, and sale deed, which said deed was and is in the words and figures following, to wit,'' following which is the deed, set out in full, the land so conveyed being a portion of the one thousand-acre tract owned by the defendants and of which the premises leased to the plaintiff, M. A. Carr, are a part. 2. A similar averment, *mutatis mutandis*, that, on the twenty-third day of April, 1908, the defendant conveyed to one R. C. Devereaux still another part of said one thousand-acre tract, the deed thereto being likewise set out *in haec verba.*

The complaint alleges that the respective grantees named in the two deeds above referred to purchased the lands therein described from the defendants, and that the latter conveyed said lands to said grantees for the purpose of allowing the latter to erect and conduct on each of the tracts so con-

veyed a hotel, saloon, and summer resort; that said lands were purchased for no other purpose, "all of which was known to said defendants at the time they made and executed their said deeds aforesaid."

The complaint further alleges that the grantees named in the deed of February 21, 1910, have, since said date, conducted, carried on and maintained at all times, a hotel, summer resort, and saloon on the land conveyed to them as above stated, "in opposition to plaintiff, M. A. Carr, and the hotel, summer resort, saloon and like business conducted by her as aforesaid; that said grantees have kept their said hotel, summer resort and saloon open and running during all of the summer months and have solicited and had the patronage of the public, which otherwise, and but for such opposition, would have patronized plaintiffs' resort, hotel and saloon." It is then alleged that the patronage so diverted from the plaintiffs and the profits thereof would have amounted to the sum of twenty thousand dollars, in which sum they were damaged.

It is likewise charged that Devereaux, grantee named in the deed of April 23, 1908, erected and has conducted a hotel, saloon, and summer resort on the land so conveyed to him, and that by reason thereof and of the fact that he solicited and received the patronage of the public, which but for the opposition so prosecuted by him to the business of the plaintiffs, the latter would have received and which had damaged them (plaintiffs) in the sum of fifteen thousand dollars, the total damages alleged and prayed for amounting to the sum of thirty-five thousand dollars.

It is further alleged—in the fourth paragraph of the complaint—that the language of the restrictive covenant in the lease, above quoted, was, by mutual consent of all the parties to the lease, distinctly understood and agreed to mean, "and do mean that defendants should not and would not let, demise or grant to any other person during the life and existence of said lease . . . the right or privilege to carry on, conduct, or operate a summer resort, hotel or saloon on said leased premises, or on said larger tract of one thousand acres, or any part of either. And it was fully understood and agreed by and between the said plaintiff and defendants, at the time of the making of said contract, that the said plaintiff should, during the life of the said contract and lease, and its contin-

uance, enjoy the exclusive right and privilege of maintaining a
hotel, summer resort, and saloon and like business upon any
of the said leased lands, and by said contract the said defend-
ants covenanted and agreed that they would not, during the
life of the said lease, or during its continuance, lease, demise,
grant or convey to any person or persons the right to maintain
a summer resort, hotel or saloon or like business upon any
of their said larger tract.''

A demurrer to the complaint on both general and special
grounds was overruled.   The defendants thereupon answered.

At the close of the case on behalf of the plaintiffs, the court
ordered a nonsuit on the motion of the defendants and dis-
missed the cause.

This appeal is by the plaintiffs from the judgment entered
upon the order granting the nonsuit and the order dismissing
the cause, and is supported by a bill of exceptions.

The single question here is whether the defendants, by sell-
ing portions of their one thousand-acre tract to the grantees
named in the two deeds above referred to, violated that cov-
enant of the lease whereby they bound themselves, during the
continuance of said lease, not to ''demise or let any other part
of their said premises to be used for like purposes as those
herein let to said party of the second part,'' etc.   The conten-
tion of the plaintiffs is that, while the defendants were not,
under the terms of the lease, foreclosed of the right to sell,
during the term and continuance of the lease, any part of their
lands not affected by said lease, they nevertheless by said lease
bound themselves not to convey or sell any part thereof with
the purpose that the same should be used as a hotel, saloon, and
summer resort, and, as their primary proposition upon this
question, they insist that the language of the restrictive clause
of the lease, when considered by the light of the uses to which
the property leased was to be put, is fairly and reasonably
susceptible of that interpretation.   In the second place, they
say that, even if the language of said clause of the lease is not
clear and certain upon that proposition, they were entitled,
under their complaint, to show by parol that it was mutually
intended and understood by and between the lessee and lessors,
at and immediately before the time of the execution of the
lease, that the effect of the restrictive covenant was to preclude
the defendants from either demising or granting any part or

parts of the tract not leased to the plaintiffs to other persons to be by them devoted to the purposes of a hotel and summer resort. In other words, as to the proposition last stated, the plaintiffs claim that if the lease itself does not disclose the real intention and understanding of the parties thereto as to its scope, they were authorized, under their complaint, so to reform that instrument as that it would conform to such intention and understanding, and that the court erred in not permitting them to do so, or, having allowed them to introduce proof for that purpose, in striking it out and thereupon granting the motion of the defendants for a nonsuit.

We are of the opinion that neither of the propositions above stated and upon which the plaintiffs rely for a reversal of the judgment can legally be sustained.

Printed in the brief of the respondent is the opinion of the learned trial judge upon the question of the scope and effect of the written lease involved here. By the interpretation of the language of the lease and the construction of the whole instrument as therein given, he reaches a result contrary to that contended for by the plaintiffs and one which, as well for the reasoning leading thereto as otherwise, is satisfactory to us. We, therefore, approve and adopt as a part of this opinion the following portions of the opinion filed by the trial judge in this cause:

"The intention of the parties must be gathered from the consideration of the lease and agreement itself, and no extrinsic evidence would be admissible to show their intention inasmuch as it is fairly expressed in said document. Does the word 'demise' coupled by the disjunctive conjunction 'or' to the word 'let' preclude defendants' right to convey or sell their property or any part thereof for any or all purposes whatsoever? Plaintiffs say it does restrict them, and defendants say no. The word 'demise,' as will hereafter appear, is the pivotal point upon which the issue turns.

"It will be observed that the lease is made for one year with the annual option of renewal for a period of nine years. Plaintiff, M. A. Carr, in connection with her hotel, is given certain privileges touching certain specified portions of said thousand acre tract; that is to say, she may use the river flowing over the land for boating purposes; she may also use certain roads laid upon said thousand acre tract for the recreation

and pleasure of guests; take wood therefrom necessary to conduct and run said hotel business; occupy stable room for two horses, and pasturage for four cows. The defendants covenant that they will not defile the grounds or render less attractive the premises let to said plaintiff for hotel purposes (not the balance of their vast estate, however) during the continuance of said lease. It will be noted, too, that the grant or license to use the premises not included within the hotel and clubhouse grounds 'for pleasure walks and recreations' extends only to that part of the estate 'where not inclosed.' There is nothing in the lease that would grant plaintiff this right where said lands are inclosed, or that would hereafter prevent defendants from inclosing so much of said estate, not specifically included within the hotel and clubhouse grounds, as they may elect.

''A study of the lease would indicate that it was not the intention of the parties to restrict defendants' right to sell or convey any part or portion of their estate by deed absolute for any and all purposes, reserving those privileges expressly excepted. It will be noted—and in considering the intention of the parties all words used in the instrument must be given their usual and ordinary effect—that defendants by the lease in question 'doth *grant,* demise and let unto the said party of the second part,' etc., the land and rights hereinbefore mentioned. Departing from the clause above quoted the language of the restrictive clause against defendants is not quite as broad or comprehensive as the language above quoted. The restriction is that they will not 'demise or let any part of their said premises to be used for like purposes as those herein let to the said party of the second part,' etc. The word 'grant' it would seem is purposely omitted.

''The word 'demise' used as a noun, means a lease for a term of years; a conveyance in fee, for life or years; the conveyance of an estate, either in fee or for life or for years, most commonly the latter. As a verb it means to lease for a term of years. (13 Cyc. 781.) As to its primitive meaning, there can be no room for dispute. It was always used in reference to a lease, and the only controversy waged about it was whether it amounted to a covenant for quiet enjoyment. It is true that it has sometimes been held, when the context clearly justified such construction, to mean a conveyance or transfer, but this

is not its usual signification. It meant more to the lessee than a mere letting by the landlord, or the mere taking by the lessee generally embraced in the terms 'to lease or to let.'

"Burrill's Law Dictionary is the only standard accessible. It defines demise as follows: 'a conveyance of an estate to another for life, for years or at will; most commonly, for years, a lease—to convey or create an estate for years or life; to lease.' The usual and operative words in leases; 'have granted, demised and to farm let, and by these presents do grant, demise and to farm let.' For further reference see: 1st Bouvier Law Dictionary; *Merchon* v. *Williams,* 63 N. J. L. 398, [44 Atl. 212]; Words and Phrases, under title of 'Demise'; Am. & Eng. Ency. of Law, under title of 'Leases'; Cyc. as above cited. See, also, numerous authorities under 'Landlord and Tenant' in this and other states. But whether the term be given its technical or more liberal construction must be determined from an interpretation of the lease, in special instances.

"The annual rental was but $350, and plaintiff M. A. Carr reserved the right annually to exercise her option as a continuing tenant. It would have been an easy matter for the parties to have restricted the sale or conveyance of any portion of the property herein mentioned for hotel or opposition purposes, if they so desired. It would hardly seem reasonable that the owners of a large body of land should have denied themselves the right to dispose of their property for its most advantageous purposes for a mere pittance of $30. a month. It is reasonable that the defendants should covenant so long as they owned said estate not to lease to any one else for similar purposes, but it is hardly reasonable to suppose that they would restrict themselves in the sale of their large estate. And may it not be that said plaintiff insisted upon the right to relinquish said premises at the end of any one year, having in view the contingency of a sale of the entire tract of land? The contract does not in words restrict the defendants from conducting a hotel or hotels.

"This is not a case in which it may be said that the court should construe the instrument most strictly against the party drawing it. Both parties having entered into the lease and contract voluntarily and having made their own terms and used their own words and phrases are bound by the ordinary

uses or acceptation and meaning of said terms, words and phrases. The court cannot go beyond that which is expressed in said lease and contract. It can only draw from the entire instrument its meaning and give it such effect as the intention of the parties is therein expressed.

"No presumption in favor of plaintiff can be indulged, as restraint in alienation of realty is not favored by the law.

"Courts cannot read into contracts terms omitted therefrom, else it would be making a contract not agreeable to the parties thereto. It cannot be that the intention of the parties is different from what the language employed therein may import. As the parties have adopted the word 'demise' and not the words 'sell,' 'convey,' 'transfer' or 'grant' or some other similar terms, it will be presumed that by the selection of the word 'demise,' they intentionally excluded the others."

But much stress is laid upon the language of the covenant in question, "and that they will not grant similar rights and privileges upon their said premises to any other person as those granted to the said party of the second part herein," it being urged that the word "grant" as used therein was so used with the intention of embracing within the operation of the restrictive clause the right to sell other portions of the lands, to be utilized for the purposes of a summer resort, etc. We are unable to coincide with that view of the language referred to.

There is nothing in the restrictive provision of the lease which has the effect of preventing the defendants from exercising the right, during the existence of the lease, to lease other portions of their said lands to other persons, provided that they are not so leased for the purpose of being used by the lessees as a summer resort, etc., in competition with the plaintiffs. The leasing of such lands for such purposes is expressly and clearly prohibited by the language of the first part of the restrictive clause. But, to protect the plaintiffs against any sort of interference with the purposes to which they intended to put the premises demised to them, the defendants further covenanted that, having granted to the plaintiffs certain rights and privileges appropriate and necessary to the full purposes of a summer resort, viz.: the right to permit guests of the hotel to use other parts of their lands, where the same are uninclosed, for purposes of recreation and pleas-

24 Cal. App.—46

ure, the right to the use of the waters of the streams on said lands for boating purposes and other similar easements, enumerated in the lease, they would not, during the continuance of the lease, grant to other persons such (similar) "rights and privileges upon their said premises." This is the natural and the grammatical construction of the clause. The fact that the words "and that" immediately follow the inhibition against the leasing of any other portions of the large tract of land clearly shows that the parties to the lease had in mind two different and distinct propositions when they incorporated into the lease the restrictive provision, to wit: 1. A covenant against demising or leasing other portions of the land for the indicated purposes; 2. A covenant against granting to other persons other rights and privileges in the nature of easements appurtenant to portions of the lands of the defendants other than the demised premises, such rights and privileges being specifically named in the lease.

But the two deeds concerned here contain no provision whereby the grantees therein named are granted the right to or privilege of carrying on a hotel or a saloon or a summer resort, their effect being merely to pass the fee in the lands described therein. Indeed, the right to conduct a hotel and summer resort or to engage in other like occupation is not one that is dependent upon grant. The plaintiff, by the lease, merely acquired an estate for years in the premises described in said lease, but while the right to maintain on the premises a hotel and summer resort is expressly mentioned as one of the rights of the lessee under the lease, it is a right which, in the absence of any reference thereto in the instrument, would have passed to the lessee as an incident of the estate created by the lease and which, being personal as to the lessee, she could, under such circumstances, have exercised or not. So it is true as to the grantees of the defendants. The right to maintain a summer resort on their respective premises was not acquired by or through the grants of said premises to them. The fact, if it were a fact, that the defendants might have sold the lands to the grantees with the knowledge that said grantees intended to maintain summer resorts thereon is immaterial, since there is nothing in the lease which prevented the former from selling and since, furthermore, having bought the lands or acquired title thereto

by purchase, as they had the right to do, the grantees were entitled to devote them to any lawful uses. Of course, if there were burdens upon their lands at the time they acquired them, they took the title subject to such burdens, and, while the question does not arise here, it may with no impropriety be remarked that, if they should in any manner impair the integrity or interfere with the right in others to the benefit of such burdens, they alone would, obviously, be answerable therefor.

We are satisfied that the complaint fails to state a case justifying the revision of the lease under section 3399 of the Civil Code.

That section provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not fully express the intention of the parties, it may be revised on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons in good faith and for value."

Nowhere in the complaint is there an allegation that any of the terms of the lease were omitted from the instrument by or through fraud or the mistake of the parties or either of them. Counsel claim, however, that revision of the lease was permissible under certain allegations of the 4th paragraph of the complaint, above quoted. As shown, the important parts of said allegations read: "That said covenant (referring to the restrictive provision) . . . was, and the words therein employed and used were by mutual consent of all the parties thereto, distinctly understood and agreed to mean, *and do mean,* that defendants should not and would not let, demise or grant to any other person . . . the right or privilege to carry on, conduct or operate a summer resort, etc., on said larger tract of one thousand acres, or any part thereof"; that "it was fully understood and agreed by and between the said plaintiffs and defendants, at the time of the making of the said contract . . ." that by said contract the defendants "covenanted and agreed that they would not, during its continuance, lease, demise, grant or convey to any person or persons the right to maintain a summer resort, etc., upon any of their said larger tract."

It will readily be noted that the foregoing allegations do not contain a statement that through the mistake of the parties or either of them, or through fraud, the real intention of the parties was not expressed in the written lease, but that they merely involve a construction by the plaintiffs themselves of the language of the lease—that is to say, the plaintiffs thus construe the lease as it was written and executed so as to extend its scope beyond that which its language clearly implies. The mere naked statement that the parties had a certain "understanding" as to the effect of the language of an instrument in writing is only to say that the parties so construe the instrument, while the mere naked statement that, by "mutual consent" of the parties thereto the instrument was to have an effect different in material respects from that which its language plainly imports would call for evidence the effect of which would be to vary the terms of the written contract.

To state a case for the revision of a written instrument, under section 3399 of the Civil Code, it is incumbent upon the pleader to show, by direct averment, that, by reason of fraud practiced by one of the parties, or of the mutual mistake of the parties or of a mistake of one of them, which the other at the time knew or suspected, there were thus omitted from the instrument certain material terms and conditions, or, in other words, that the language of the writing failed, for some reason, to express the intention of the parties. The complaint in this case does not, as must readily be perceived upon reading it, measure up to this requirement. Hence, the effect of the evidence stricken out by the court would have been to vary or modify the terms of a written instrument and the course taken by the court in striking it out was proper.

After said testimony was stricken from the record, nothing was left to support the claim of the plaintiffs to damages and there was, therefore, no other course open to the court but to grant the defendants' motion for a nonsuit.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 4, 1914.