## GRIGSBY v. DICKINSON.

First Division.   Ketchikan.   July 31, 1926.

No. 830–KA.

**1. Attorney and Client ⬅144—Reformation of Instruments—Contract between Attorney and Client—Words and Phrases.**

The attorney made a written agreement with his client for compensation, and among other things agreed that, if the case was "settled out of court," the fee should be less. The case went to trial, but was afterwards settled out of court. On suit to reform the contract, *held*, the phrase "settled out of court" had a definite meaning, and that any settlement of the cause of action made without the intervention of the court was "a settlement out of court"; that as no limitation was expressed in the written contract, and because there was no ambiguity in the terms, and no mistake was alleged in the written contract in reducing the original contract to writing, its terms should govern.

**2. Evidence ⬅397(1)—Contracts—Variance by Oral Evidence.**

If a written contract between the parties is plain and unambiguous, no oral testimony will be received to vary its terms; if a contract in writing does not express in terms the original oral agreement between the parties, a remedy is provided by the law.

**3. Reformation of Instruments ⬅18—Contracts—Reformation of Mistakes in Written Contracts—Mistake of Law.**

If, after making an agreement, in the process of reducing such agreement to a written form, the writing, by means of a mistake of the law, fails to express the contract which the parties actually entered into, equity will interfere to reform it, or to prevent its enforcement, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance, there is no mistake as to the legal import of the contract actually made, but the mistake of law prevents the real contract from being embodied in the written instrument. This limitation must, however, be kept within the principle on which it rests, which is simply that the intention of the parties should be carried into effect. The intention of the parties is the criterion.

**4. Reformation of Instruments ⬅45(2)—Contracts.**

In every case it must clearly and satisfactorily appear that the precise terms of the contract had been orally agreed upon, and that the writing afterwards signed fails to be, as it was intended, an execution of such previous agreement, but, on the contrary, expresses a different contract.

⬅See same topic & KEY-NUMBER in all. Key-Numbered Digests & Indexes

**5. Pleading ⬡⇒53(1)—Inconsistent Causes of Action.**

There is nothing in the Code system or rules of pleading which forbids the pleader from taking inconsistent positions in stating separate causes of action; a pleader may declare on an express contract as for services performed, and, in the same complaint, declare in a different count for the reasonable value of the services.

The original complaint in this action was based upon a contract of employment of the plaintiff by the defendant as attorney at law to defend a certain action then pending in this court at Ketchikan, in which one P. G. Charles, as administrator, was plaintiff, and G. E. and the defendant B. P. Dickinson were defendants. The contract was reduced to writing and was set forth in the complaint. This contract is also the basis of the amended complaint, and is as follows:

"Contract.

"This contract, entered into this 18th day of August, 1924, between B. P. Dickinson, party of the first part, and George B. Grigsby, party of the second part, witnesseth:

"Party of the first part employs party of the second part as attorney at law, to render all necessary legal services in the District Court for the District of Alaska, First Division, in that certain action now pending in said court entitled P. G. Charles, Administrator of the Estate of Grace W. Reed, Deceased, Plaintiff, v. G. E. Dickinson and B. P. Dickinson, Defendants, and for said services agreed to pay second party as follows: The sum of $250 cash as retainer fee. An additional sum of $750, contingent upon the successful defense of said action, provided that, if said action result in a judgment for plaintiff and against defendant in a sum less than $10,000, the amount of said contingent compensation shall be reduced at the rate of $75 for every $1,000, or major fraction thereof, of said judgment.

"If said action shall terminate in a settlement out of court, the amount of additional compensation to second party shall be one-third of what it would have been under this contract, had judgment been rendered against defendant in the amount settled for.

"In case of an appeal, first party shall pay second party $250 for services on such appeal.

"First party agrees to pay all costs, disbursements, and expenses of said action.

"Second party agrees to render all legal services necessary in said court to the best of his ability.          B. P. Dickinson.

"George B. Grigsby."

In his original complaint it was alleged by the plaintiff that plaintiff prepared all necessary pleadings, defended the action on

⬡⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the trial thereof, and did all things necessary in regard thereto, and fulfilled the conditions of the contract aforesaid to be performed by him; that the action came on for trial on the 25th day of April, 1925, and resulted in a verdict of the jury against defendant B. P. Dickinson for the sum of $3,000; that, after the rendition of the verdict, plaintiff prepared a motion for a new trial and a motion to set aside the verdict, and thereafter at defendant's request conducted negotiations for the settlement of the case, and did effect a settlement, by reason of which the said action was dismissed on the payment of $2,000 by the defendant, and immediately prior to the settlement it was agreed between plaintiff and defendant that the balance due the plaintiff from defendant for attorney's fees upon the settlement on the terms aforesaid would be $350 after deducting all payments theretofore made by defendant, and that defendant promised and agreed to pay the same, and that defendant has not paid any part thereof.

For a second cause of action in the original complaint, the plaintiff for the same services sets up a cause of action in quantum meruit, in which he claims the sum of $1,000. To this complaint, after demurring and moving to strike, the defendant answered, and denied the promise or agreement, alleged by the plaintiff in his first cause of action, to pay the plaintiff the sum of $350 for his services, and further answered, alleging that according to the contract set forth in the complaint he had overpaid the plaintiff the sum of $50. For a second affirmative defense she alleged, in substance, negligence on the part of the plaintiff in conducting the defense of the action. Answering plaintiff's second cause of action, defendant denied the whole thereof, except that she admitted the payments as alleged in the complaint by plaintiff to the defendant. A reply was filed by plaintiff, denying all the affirmative matter in defendant's answer.

The case rested in that way until the spring of 1926, when there was a change of attorneys for the defendant. The new attorneys promptly moved for judgment on the pleadings. This motion was passed upon by me, and granted, but on the oral request of plaintiff to be allowed to amend his complaint he was permitted so to do, and on May 4, 1926, he filed his amended complaint, to which defendant by her counsel demurred on

several grounds mentioned, all of which grounds, however, may be condensed under a general demurrer to each cause of action. The amended complaint, before me, after setting forth the employment of the plaintiff by defendant, alleges:

That the contract of employment was reduced to writing, and then sets forth the written contract in the original complaint, hereinbefore set out in full, but then alleges that the aforesaid contract so made and entered into as aforesaid did not express the true intent and meaning of the aforesaid contracting parties in respect to that paragraph contained in said contract which is as follows:

"If said action shall terminate in a settlement out of court, the amount of additional compensation to second party shall be one-third of what it would have been under this contract had judgment been rendered against defendant in the amount settled for."

That the true intent and meaning of the aforesaid paragraph, as understood by plaintiff and defendant at the time said contract was entered into, was that, if said action should terminate in a settlement out of court *without trial*, the amount of additional compensation to second party should be one-third of what it would have been under said contract, had judgment been rendered against defendant in the amount settled for; that the true intent and meaning of the words "settlement out of court" contained in the aforesaid paragraph of said contract was, as understood between plaintiff and defendant at the time said contract was entered into, "settlement out of court *without trial*." That, at the time the said contract was entered into between plaintiff and defendant, both plaintiff and defendant understood and agreed, meant, and intended the said paragraph above quoted to mean as follows, to wit:

"If said action shall terminate in a settlement out of court *without trial*, the amount of additional compensation to second party shall be one-third of what it would have been under this contract, had judgment been rendered against defendant in the amount settled for."

That the aforesaid contract made and entered into as aforesaid did not express the true intent and meaning of the aforesaid contracting parties, plaintiff and defendant, in respect to that paragraph contained in said contract which is as follows, to wit:

"An additional sum of $750 contingent upon the successful defense of said action, provided that, if said action result in a judgment for plaintiff and against defendant in a sum less than $10,000, the amount of said contingent compensation shall be reduced at the rate of $75 for every $1,000, or major fraction thereof, of said judgment."

That at the time said contract was entered into between plaintiff and defendant both plaintiff and defendant understood and agreed, meant, and intended the said paragraph last above quoted to mean as follows, to wit:

"An additional sum of $750 contingent upon the successful defense of said action, provided that, if said action result in a *recovery* by plaintiff from defendant of a sum less than $10,000, the amount of said contingent compensation shall be reduced at the rate of $75 for every $1,000, or major fraction thereof, of said *recovery.*"

And the amended complaint continues, alleging that pursuant to said contract of employment plaintiff prepared all necessary pleadings and defended the action on the trial thereof, doing all things necessary to be done in the premises as attorney for the defendant, and fulfilling all the terms and conditions on his part required to be performed by the contract; that said case came on for trial at Ketchikan, Alaska, on the 20th and the 25th days of April, 1925, and resulted in a verdict for plaintiff in the sum of $3,000; that, after the rendition of such verdict, plaintiff prepared and filed a motion for a new trial and a motion to set aside the verdict, and thereafter conducted negotiations for a settlement of said action at the request of said defendant, and as 'a result of said negotiations did on the ———— day of May, 1925, effect a settlement by the terms of which the defendant was to pay the plaintiff in the action, P. G. Charles, as administrator of the estate of Grace W. Reed, the sum of $2,000; that, pursuant to the terms of the aforesaid contract, defendant paid plaintiff on August 21, 1924, the sum of $250, the retainer fee agreed upon in the contract; and that, 'pursuant to paragraph 2 of the contract in controversy and the services rendered by the defendant, there became due and owing to the plaintiff on the ———— day of May, 1925, the sum of $600, being the amount of contingent compensation earned by plaintiff under the terms of the contract; that defendant has paid the plaintiff the sum of $250, and that there is still due and owing to the plaintiff from defendant the sum of $350; that plaintiff has made frequent demands upon the defendant for the pay-

ment of said $350, but that defendant has failed and refused to pay the same, or any part thereof; and that the same is still due, owing, and unpaid.

The second cause of action alleges the employment of plaintiff by defendant as attorney in the case of Charles, administrator, against the defendant, the performance of services by plaintiff to and including the verdict for $3,000 against the defendant, the rendering of services in securing dismissal of the case on payment by the defendant of $2,000, and further alleges that the services were reasonably worth the sum of $1,500, no part of which has been paid, except the sum of $500, and that $1,000 is due and owing to the plaintiff.

The prayer of the complaint is for a money judgment of $350 and interest, on his first cause of action, and for $1,000 and interest, on his second cause of action.

Wm. A. Holzheimer, of Ketchikan, for plaintiff.
Duggan & McCain, of Ketchikan, for defendant.

REED, District Judge. Considering the first cause of action, it is apparent that the plaintiff is seeking to void the terms of the written contract, by introducing a limitation of the phrase "settled out of court," and to impart a meaning other than that commonly accepted to the word "judgment," used in the original contract, by substituting the word "recovery" in place thereof. The wording of the complaint is that the written contract did not express the true intent and meaning of the parties in the aforesaid respects, but that both plaintiff and defendant understood, agreed, meant, and intended that the paragraph should read according to and with the limitation expressed, and the substituted word set forth in the complaint.

It is difficult for one to understand exactly the purpose of the pleadings. I held on the motion for judgment on the pleadings on the first complaint that the phrase "settled out of court" had a definite meaning, and that any settlement of the cause of action, made without the intervention of the court, was "a settlement out of court," and that, as no limitation was expressed in the written contract, and because there was no ambiguity in the terms, and no mistake was alleged in the written contract in reducing the original contract to writing, its terms should govern. If its meaning was plain and unambiguous, no oral

testimony would be received to vary its terms. I further expressed the opinion that, if the writing did not express in terms the original oral agreement between the parties, a remedy lay with the plaintiff, and allowed him to amend.

Mistakes in a contract may occur in many ways, but may be brought under two classifications; those concerning the subject-matter of the contract, and those concerning its terms. The first class of cases is when the contract complies with the intention of the parties, but there is an error in respect to the thing to which the contract applies; the second class of cases is where the error arises in reducing the contract to writing, and may occur in adding to or omitting some term, or changing the phraseology, so as not to express the true intent of the parties.

It is evident from an examination of these pleadings that it was the intention of the plaintiff to allege a mistake in the written contract, which arose in reducing the same to writing, and to reform the written contract by making it conform to the original understanding of the parties. To do this, in his complaint the plaintiff seeks to interpolate a limitation in the written contract, claiming that it was mutually intended and understood, and also to substitute a word therein having an entirely different meaning from that in the written contract, on the ground that the phrase and word used did not express the understanding and agreement of the parties.

The defendant urges that the plaintiff pleads a mistake at law, and that such a mistake is not ground for relief. It is often very difficult to determine whether a mistake occurring in a contract is of law, or of fact, or both. As pleaded in this action, it may be a mistake of law; but, according to my view, if properly pleaded, it was a mistake of fact. Whether a mistake of law, or of fact, it makes little difference; there are exceptions to the general rule that there is no ground for relief of a mistake of law. See Pomeroy on Specific Performance of Contracts (2d Ed.) § 234, which, after stating the general rule, thus lays down the almost universally accepted doctrine in these words:

"* * * But if, after making an agreement, in the process of reducing such agreement to a written form, the writing, by means of a mistake of the law, fails to express the contract which the parties actually entered into, equity will interfere to reform it, or to prevent its enforcement, to the same extent as if the failure of the writing

to express the real contract was caused by a mistake of fact. In this instance, there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. This limitation must, however, be kept within the principle on which it rests, which is, simply, that the intention of the parties should be carried into effect. The intention of the parties is the criterion."

The plaintiff alleges, in effect, that it was mutually understood that the compensation allowed the plaintiff, if settled out of court without trial, should be one-third of what it would be; had judgment been rendered against defendant in the amount settled for, and that the word "judgment," used in the paragraph of the contract relative to plaintiff's compensation, should be "recovery" by plaintiff from defendant.

It appears that it was the purpose of the pleader to declare a mutual mistake of the parties to the original contract, but that, in reducing the agreement to writing, the written instrument did not, through the mistake, express the intention of the parties. It is a doctrine of equity in such cases that the writing may be reformed to correctly represent the true agreement between the parties, and that the contract as reformed may be enforced in the same action. 2 Pomeroy on Equity Jurisprudence, par. 870, declares the principle as follows:

"Reformation is appropriate in cases of mutual mistake; that is, when an agreement has been made or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction to writing, [either] through a mistake common to both parties, * * * the written instrument fails to express the real agreement or transaction. In such case, the instrument may be corrected, so that it shall truly represent the agreement or transaction actually made or determined upon, according to the real purpose and intention of the parties."

It must be observed that the mistake which is ground for this relief must be in reducing the contract to writing. In every case it must clearly and satisfactorily appear that the precise terms of the contract had been orally agreed upon, and that the writing afterwards signed fails to be, as it was intended, an execution of such previous agreement, but, on the contrary, expresses a different contract.

The first cause of action in the case at bar seems to seek to avoid the terms of the written contract by stating that it did not express the intention of the parties thereto. It does not

seek relief by reformation of the written contract, so as to express the terms of the original oral agreement, nor does it state, except by inference, what the terms of the original oral agreement were. The only statement is that the written agreement did not express the true intent and meaning of the parties as mutually understood by them. It is therefore insufficient, as not stating grounds for reformation of the written contract, because of mutual mistake in reducing the original oral contract to writing. See Pierson v. McCahill, 21 Cal. 122; Drake v. First Nat. Bank, 33 Kan. 634, 7 P. 219; Carr v. King, 24 Cal. App. 713, 142 P. 131; Auerbach v. Healy, 174 Cal. 60, 161 P. 1157.

Had the plaintiff stated that an agreement was entered into between the parties orally, giving its terms, and that it was reduced to writing in the form set forth in the complaint, but that in reducing the contract to writing a mutual mistake was made, showing wherein the same lay, and that the same should be conformed to comply with the mutual understanding of the parties, and then follow with allegations for the enforcement of the contract as reformed, there would be a good cause of action under the reformed procedure, where the distinction in form between law and equity is abolished. See citations, Pomeroy, Code Remedies (4th Ed.) par. 17; Pringle v. Hall, 6 Ariz. 284, 56 P. 740; Cutting Co. v. Peterson, 164 Cal. 44, 127 P. 163; Hornick v. Union Pac. R. Co., 85 Kan. 568, 118 P. 60, 38 L. R. A. (N. S.) 826, Ann. Cas. 1913A, 208.

As the first cause of action stands, I am of the opinion that the demurrer should be sustained; and it is so ordered.

As to the second cause of action, I am of the opinion that the demurrer should be overruled. Although in the first cause of action the plaintiff declares on a written contract providing for a total fee of $1,000 for a successful defense of the action he was employed to defend, and does not, in his first cause of action, impugn the contract in that regard, but insists that it is the basis of his claim for defendant admitting payment of $500 according to its terms. Yet, standing by itself, the second cause of action is a good pleading for the reasonable value of the services rendered, as against a general demurrer.

The ground of defendant's demurrer to the second cause of action is its inconsistency with the first cause of action. There is nothing in the Code system or rules of pleading which forbids

the pleader from taking inconsistent positions in stating separate causes of action. Therefore a pleader may declare on an express contract as for services performed, and, in the same complaint, declare in a different count for the reasonable value of the services, and, if he fails in proof of the express contract, rely on his proof under the quantum meruit. This is an established rule of pleading, and until it is determined from the pleadings whether there was an express contract entered into as alleged, the count on quantum meruit would stand.

If the express contract is admitted, the complainant would be bound by it, and a motion to strike would lie. If denied, a motion to elect, in certain contingencies, would lie. See Murphy v. Russell, 8 Idaho, 133, 67 P. 421, 426; Darknell v. Cœur d'Alene & St. Joe Transportation Co., 18 Idaho, 61, 108 P. 537; Olmstead v. Dauphiny, 104 Cal. 635, 38 P. 505; Cowan v. Abbott, 92 Cal. 100, 28 P. 213; Bliss on Code Pleadings, § 120; 5 Ency. Pleading & Practice, 324.

The demurrer to the second cause of action will therefore be overruled.