RENEE CLEANERS, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF, v. GOOD DEAL SUPER MARKETS OF N. J., INC., A CORPORATION OF NEW JERSEY, IVY HILL STORES, INC., A CORPORATION OF NEW JERSEY, RICKARJEF, INC., A CORPORATION OF NEW JERSEY, AND W. M. S. CO., A CORPORATION OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 14, 1964.

*Messrs. Bracken & Walsh,* attorneys for plaintiff (*Mr. Joseph F. Walsh,* appearing).

*Messrs. Hellring, Lindeman & Landau,* attorneys for defendants (*Mr. Norman Bruck,* appearing).

HERBERT, J. S. C. There are cross-motions for summary judgment. The plaintiff is a tenant of premises at 709–15 Irvington Avenue, Maplewood, where it operates a dry-cleaning and laundry business. The tenancy was created by a ten-

year lease made in 1959 between Ivy Hill Stores, Inc., and the plaintiff, under which the annual rental is $6,000.

Paragraph 51 of the lease is at the base of the plaintiff's suit. It reads:

"The Landlord will not lease any other stores in the group of stores of which the demised premises are a part to any Tenant for the operation of a dry cleaning and pressing store, including tailoring, finished shirts and finished laundry. In addition the Landlord or any person, firm or corporation directly or indirectly controlled by Landlord will not lease to such a store within 500' of the premises."

The plaintiff claims a letting of the store at 763–765 Irvington Avenue, Maplewood, to another dry-cleaning establishment has violated paragraph 51 by setting up a competitor within 500 feet of the plaintiff's location. That letting was by W. M. S. Co. as landlord; and W. M. S. Co.—which is not and never has been a "firm or corporation directly or indirectly controlled by" Ivy Hill Stores, Inc.—acquired title to 763–765 Irvington Avenue by purchase from Rickarjef, Inc., an affiliate of Ivy Hill Stores, Inc. W. M. S. Co., though made a defendant originally, by stipulation has been dismissed from the case with prejudice. Thus, if all other elements of a violation of paragraph 51 of the lease be assumed, the defendants still before the court can say that none of them leased 763–765 Irvington Avenue to a competitor of the plaintiff and that, at most, one of them (Rickarjef, Inc.) sold that property in or about December 1961 to a stranger (W. M. S. Co.) who thereafter leased to a competitor of the plaintiff. The plaintiff, however, argues in its brief:

"If the defendants desired to sell the Rickarjef property to W. M. S. Co., they had a perfect right to do so, but they also had the obligation to see that the sale contained provisions for the further performance of the obligations they had assumed in their contract [paragraph 51 of the lease] with the plaintiff."

*Carr v. King,* 24 *Cal. App.* 713, 142 *P.* 131 (*D. Ct. App.* 1914), presented a question identical to the one now before me. It was resolved against the tenant. The court held the

landlords' sale of part of their property, to buyers who used the purchase for a hotel business in competition with the hotel operated by the plaintiffs on their leasehold, did not violate a covenant of the defendant landlords that they would not "demise or let any other part of their said premises to be used" for business competition with the plaintiffs. There was no violation, said the California court, because the covenant sued upon applied only to leasing and not to selling.

Substantially the same problem came up in *Postal Telegraph Cable Co. v. Western Union Telegraph Co.,* 155 *Ill.* 335, 40 *N. E.* 587 (*Sup. Ct.* 1895). There the plaintiff's landlord made a covenant not to "lease" any part of the same building to another telegraph company. While the lease was still in effect the building was sold, "subject * * * to the outstanding leases," to Western Union which promptly began to use space for its own telegraph business. On these facts the court held there had been no violation of the covenant against leasing.

A result somewhat comparable to those of the *Carr* and *Postal* cases, *supra,* has been reached in New Jersey. *Field v. Mills,* 33 *N. J. L.* 254 (*Sup. Ct.* 1869). The tenant there had covenanted "not to let or underlet the whole or any part of the" leased premises without the consent of the landlord, under penalty of forfeiture. When he assigned the entire lease, the landlord declared the tenancy ended and sued for ejectment. Although he had judgment in the trial court, there was a reversal on appeal, it being held that a covenant against an underletting was not broken by an assignment of the lease.

The plaintiff places special reliance upon *Hiatt Inv. Co. v. Buehler,* 225 *Mo. App.* 151, 16 *S. W. 2d* 219 (*Ct. App.* 1929). In that case the landlord's covenant was "that there is to be no other drugstore in the holdings of the Hiatt Investment Company." After the date of the covenant a vacant lot in the immediate neighborhood of the Buehler drugstore was sold by Hiatt to a buyer, who promptly leased to another drugstore company, and when Buehler moved out before the end

of his lease he was sued for rent and filed a counterclaim based in part upon a violation of the covenant. On appeal a verdict on the counterclaim was affirmed, the court saying (16 *S. W.* 2*d*, at *p.* 223):

"We have no doubt that the covenant required plaintiff to take means to prevent the coming of a drug store upon the vacant lot during the existence of the lease."

But in reaching this result the court distinguished the *Postal* case, *supra,* commenting:

"In that case the covenant was against the leasing and not against the sale of the building. Here the covenant did not specify either a lease or sale, but required the lessor to see to it that no drug store came in its buildings. This language covered both a lease and a sale. For these reasons we think that the cases of *Kemp v. Bird,* L. R. 5 *Ch. Div.* 974; *Carr v. King,* 24 *Cal. App.* 713, 142 *P.* 131, *Lucente v. Davis,* 101 *Md.* 526, 61 *A.* 622, and similar cases cited by the plaintiff, are not in point."

■■ There is a rule that restrictions upon the use of property shall be strictly construed, but it has been said that there is for cases like the present a counterbalancing factor in that covenants to refrain from competition or to refrain from leasing to a competitor, if reasonable in scope, "will be realistically construed in furtherance of their obvious purpose." *Cragmere Holding Corp. v. Socony-Mobil Oil Co.,* 65 *N. J. Super.* 322, 326 (*App. Div.* 1961). I can find no "obvious purpose" of the parties here which would justify construing paragraph 51 of the lease as though it had been written to include an obligation of the defendants to impose upon all purchasers of their respective titles a covenant not to lease property within 500′ of the plaintiff's store to a competitor of the plaintiff. In *Field v. Mills, supra,* Chief Justice Beasley pointed out that from a landlord's point of view, a covenant against subletting differs substantially in a practical sense from a covenant against assignment of the lease. Much in the same way it might be said in the present case that the defendants, though willing to deprive themselves of an oppor-

tunity to lease to a second cleaning establishment while they owned the restricted premises, would have been assuming a substantial additional burden if they had agreed to pass on the same restriction to buyers of the property and might not have been willing to jeopardize chances of sale by doing so. In some portions of the lease the parties used the term "sale" to refer expressly to a possible disposition of the title by the landlord. From this some inference can be drawn, I think, that they did not mean to extend the restrictive covenant of paragraph 51, which uses the word "lease," by implication to cover a sale or sales of the premises. Thus there is a factual support here—over and beyond the text of paragraph 51— for the same result reached by the California court in *Carr v. King, supra.*

■ ▉ This is a case in which it is appropriate under *Rule* 4:58 to enter judgment without trial. For the reasons stated the defendants are entitled to judgment as a matter of law. Costs are allowed to them.