89 N.J. Super. 186 (1965)
214 A.2d 437
RENEE CLEANERS, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
GOOD DEAL SUPER MARKETS OF N.J., INC., A CORPORATION OF NEW JERSEY, IVY HILL STORES, INC., A CORPORATION OF NEW JERSEY, RICKARJEF, INC., A CORPORATION OF NEW JERSEY, AND W.M.S. CO., A CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1965.
Decided November 1, 1965.
*187 Before Judges GAULKIN, LABRECQUE and BROWN.
Mr. Joseph F. Walsh argued the cause for appellants (Messrs. Bracken & Walsh, attorneys).
Mr. Norman Bruck argued the cause for respondents (Messrs. Hellring, Lindeman & Landau, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff Renee Cleaners, Inc. (Renee), appeals from the entry of summary judgment in favor of defendants Good Deal Super Markets of N.J., Inc. (Good Deal), Ivy Hill Stores, Inc. (Ivy Hill) and Rickarjef, Inc. (Rickarjef), and from denial of summary judgment in its favor.
Ivy Hill and Rickarjef are wholly owned subsidiaries of Good Deal. On April 18, 1959 Ivy Hill leased to plaintiff store #1 in the Irvington Avenue Shopping Center, Maplewood, New Jersey, for a period of ten years. The lease covers 36 pages in the appendix, contains 57 paragraphs  a number *188 with subparagraphs  and has annexed to it a schedule containing an additional 13 paragraphs. It provided, among other things, that:
"The Tenant shall use and occupy the store premises for no purpose other than as a retail store for the on premises dry cleaning and pressing of clothes, fur storage and blazing, finished laundry service, and for no other purpose without the express written consent of the Lessor."
It further provided:
"51. The Landlord shall not lease any other stores in the group of stores of which the demised premises are a part to any Tenant for the operation of a dry cleaning and pressing store, including tailoring, finished shirts and finished laundry. In addition the Landlord or any person, firm or corporation, directly or indirectly controlled by Landlord will not lease to such a store within 500' of the premises." (Emphasis added)
The leased premises were located on what might be called parcel A. In addition, Rickarjef was the owner of parcel B, adjoining. Defendants have stipulated that they were all included in the aforementioned reference to the "Landlord or any person, firm or corporation, directly or indirectly controlled by the Landlord," and that if Rickarjef still owned parcel B, the leasing of any portion thereof within 500 feet of plaintiff's store would have come within the interdiction of the quoted paragraph.
Subsequent to the execution of the lease and plaintiff's entry into possession, defendants Rickarjef and Good Deal sold parcel B to a corporation known as W.M.S. Co. Two months later Ivy Hill and Good Deal sold the premises upon which plaintiff's store was located to Avon Enterprises, which assumed the obligations of the lease only insofar as they related to that specific parcel.
Thereafter W.M.S. Co. entered into a lease with a competing automatic dry cleaning business known as Norge Villa, covering premises located in parcel B which, plaintiff asserts, are within 500 feet of its store.
*189 Plaintiff thereupon instituted the present suit against Ivy Hill, Good Deal, Rickarjef and W.M.S. Co. The count against W.M.S. Co. was later dismissed when it was made to appear that it had had no knowledge of the terms of the lease between Renee and Ivy Hill. The sole issue remaining in the case was plaintiff's right to damages from defendants for violation of the covenant referred to. The trial judge held that the covenant had not been breached by the sale of the premises to W.M.S. Co. See Renee Cleaners, Inc. v. Good Deal, etc., N.J., 83 N.J. Super. 85 (Ch. Div. 1964).
Another provision of the lease, paragraph 39, provided that:
"39. The conditions, covenants and agreements in the aforesaid lease contained, to be kept and performed by the parties hereto shall be binding upon and inure to the benefit of said respective parties, their legal representatives, successors and assigns. This clause shall not be construed to permit any assignment or subletting, without Landlord's consent. The term `Landlord' as used in this Lease means the owner of the building of which the demised premises form a part, so that in the event of any sale of said building or in the event of a lease of said building, the said Landlord shall be and hereby is entirely freed and relieved of all covenants and obligations of Landlord hereunder and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, at any such sale or the said leasing of the building, that the purchaser or lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Landlord hereunder. If the Landlord shall lease the building in which the demised premises are located, and said building-lessee defaults, the Tenant under this lease shall not be deemed in default and said lease shall continue with this Landlord."
Plaintiff concedes in its brief that if defendants desired to sell parcel B, they were not precluded by the lease from so doing, provided they made provision for the further performance of the obligation they had assumed by virtue of paragraph 51 thereof.
The basic questions involved are: (1) the extent of defendants' obligation under the lease, and (2) depending upon the nature of their obligation, whether they could sell the premises affected thereby without making provision for the further *190 performance of such obligation. Neither the industry of counsel nor our own research has unearthed a New Jersey decision which is dispositive of the issue.
An agreement, such as the one here involved, is to be construed in its entirety. Washington Construction Co., Inc. v. Spinella, 8 N.J. 212 (1951). In general, the polestar of construction is the intention of the parties as disclosed by the language used, taken in its entirety, and evidence of the attendant circumstances may be considered, not to change the agreement made but to secure light by which to measure its actual significance. Casriel v. King, 2 N.J. 45 (1949). Terms may be implied therein where the parties must have intended them "because they are necessary to give business efficacy to the contract as written, or to give the contract the effect which the parties, as fair and reasonable men, presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they contracted expressly in reference thereto." William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 487 (Ch. Div. 1953), modified on other grounds 29 N.J. Super. 316 (App. Div. 1954).
In Cragmere Holding Corp. v. Socony-Mobil Oil Co., 65 N.J. Super. 322 (App. Div. 1961), plaintiff-landlord had leased certain premises on Route 17 in Mahwah Township to defendant for use as a gasoline service station. The lease contained a provision that, with one exception, no other property located on the westerly side of Route 17 within 1,000 feet of the leased premises would be developed in whole or in part for the sale or distribution of petroleum products. Approximately a year later plaintiff purchased additional real estate on the westerly side of Route 17 and within 1,000 feet of the leased premises. It thereupon sought a judicial declaration that it could utilize its purchase for the operation of a service station notwithstanding the restriction contained in the original lease, on the ground that the restriction applied only to property owned by it at the time the lease was executed. In rejecting this contention it was held:
*191 "* * * The covenant in question must be construed in the light of both the circumstances under which it was written, and the purpose, express or implied, of the parties in effecting their arrangements, in order that we may attribute to their language a rational meaning consonant with that purpose. Casriel v. King, 2 N.J. 45, 50 (1949); Broad & Branford Place Corp. v. J.J. Hockenjos Co., 132 N.J.L. 229, 236 (Sup. Ct. 1944); William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 497 (Ch. Div. 1953), modified 29 N.J. Super. 316 (App. Div. 1954); See 3 Williston on Contracts (rev. ed. 1936) § 618, pp. 1777-1781. So viewed, the crucial feature of this covenant is its applicability `during the term of this lease and any renewal or extension thereof.' It is clear from the stipulation that plaintiff was already operating a service station in the vicinty [sic] of the leased tract, namely, the station excepted from the restriction contained in the provision under consideration. Defendant was seeking and, by virtue of the covenant, obtained protection against competition, direct or indirect, from its landlord for the duration of the lease." (at p. 325)
and further:
"We note, additionally, that the rule of strict construction is counterbalanced in the instant case by an evolving principle to the effect that covenants to refrain from competition, or to refrain from leasing to a competitor, if sufficiently reasonable in scope to avoid being labelled in restraint of trade, will be realistically construed in furtherance of their obvious purpose." (at p. 326)
In Cragmere, by way of illustration of the extent to which modern-day tribunals will go in recognizing the commercial facts of life and sheltering a tenant who has contracted for exclusive rights, the opinion quotes from Carter v. Adler, 138 Cal. App.2d 63, 291 P.2d 111 (D. Ct. App. 1955), to the effect that:
"A restrictive covenant, such as the grant of the exclusive mercantile rights to respondents, is not merely ornamental words inserted to please the eye. It is a living expression of the grantor incorporated in the lease as a consideration for the lessee's faithful performance. Concomitant with such a covenant is the implied obligation of the lessor not to cancel the covenant or derogate from its force by so using his adjoining property as substantially to impair the lessee's enjoyment of the leased premises." (291 P.2d, at p. 115)
In Carter there had been a lease of a parcel in a shopping center for use as a "Grocery, Delicatessen, etc.," with a covenant *192 that the lessee should have the exclusive right to such use. Thereafter the owners conveyed the entire tract, including the parcel leased to plaintiff. Plaintiff then acquired an additional parcel from a third party in order to increase the area of the shopping center. Upon the refusal of the tenant to waive its exclusive right, it filed a complaint for declaratory relief, arguing that the covenant did not apply to the subsequently acquired parcel. Relief was denied, the court holding as above stated.
While defendants cite a number of cases supporting the strictly literal interpretation sought to be accorded the covenant here involved, we consider the view expressed in Cragmere to be the better one and more in line with the greater weight of modern authority. Cf. University Club of Chicago v. Deakin, 265 Ill. 257, 106 N.E. 790, L.R.A. 1915C, 804 (Sup. Ct. 1914); Snavely v. Berman, 143 Md. 75, 121 A. 842 (Ct. App. 1923); Peoples Trust Co. v. Schultz Novelty & Sporting Goods Co., 244 N.Y. 14, 154 N.E. 649 (Ct. App. 1926); Hiatt Inv. Co. v. Buehler, 225 Mo. App. 151, 16 S.W.2d 219 (Ct. App. 1929); R.M. Sedrose, Inc. v. Mazmanian, 326 Mass. 578, 95 N.E.2d 677 (Sup. Jud. Ct. 1950). See also Annotation, "Validity, construction, and effect of lessor's covenant against use of his other property in competition with the lessee-covenantee," 97 A.L.R.2d 4, 21, 31 (1964).
In Hiatt the lessor, who owned a small shopping center containing 12 stores, in its lease of one of them to defendant covenanted that:
"It is expressly understood that there is to be no other drug store in the holdings of the Hiatt Investment Company * * *."
It thereafter sold part of its holdings without a restrictive clause, and the new owners leased to a competing drug company. The first lessee refused to pay rent and, upon suit being instituted therefor, counterclaimed for the lessor's breach of covenant. In defense of the counterclaim it was argued by the lessor that the restrictive covenant applied only to the use *193 of its buildings while it was in ownership and control, and ceased upon the sale to another. In overruling this contention the court held:
"It would appear to us that the language of the restrictive covenant under consideration, upon its face, and taken in connection with the other parts of the written lease, shows that plaintiff covenanted not to permit any other drug store to come into its holdings during the term of the lease. There is nothing in the language used in the covenant indicating that plaintiff agreed merely that no other drug store should come in its holdings while title to such holdings were in it. If the language of the lease and the covenant leave any doubt as to what the parties intended to cover in this respect, that doubt would be removed by reading the lease in the light of the situation surrounding the parties when it was executed.

* * * * * * * *
Defendant was desirous of being protected against competition of a drug store upon the vacant lot during the term of this lease. It would be immaterial to him who owned the lot, whether plaintiff or plaintiff's grantees or lessees. We have no doubt that the covenant required plaintiff to take means to prevent the coming of a drug store upon the vacant lot during the existence of the lease."
Defendants cite Brigg v. Thornton, 1 Ch. 386 (C.A. 1904); Kemp v. Bird, L.R., 5 Ch. Div. 549, affirmed L.R., 5 Ch. Div. 974 (C.A. 1876); Carr v. King, 24 Cal. App. 713, 142 P. 131 (D. Ct. App. 1905); Postal Telegraph Cable Co. v. Western Union Telegraph Co., 155 Ill. 335, 40 N.E. 587 (Sup. Ct. 1895); Lucente v. Davis, 101 Md. 526, 61 A. 622 (Ct. App. 1905), and Field v. Mills, 33 N.J.L. 254 (Sup. Ct. 1869), in support of the interpretation which they seek.
The references in each of the English cases referred to on which defendants rely are dicta only. We note, however, that in Jay v. Richardson, 30 Beav. 563, 54 Eng. Rep. 1108 (Rolls Ct. 1862), where the lessor's covenant was not to let any building, or any land for the erection of any building, to be used for a specified purpose, the court (again by dictum) rejected defendant's contention that the lessor's covenant against "letting" did not prevent a sale for such purpose, and held that the effect and meaning of the covenant was that the lessor would do nothing which would permit the restricted *194 premises to be used for the prohibited purpose. Postal Telegraph Cable Co. v. Western Union Telegraph Co. antedated University Club of Chicago v. Deakin, supra, as did Carr v. King and Carter v. Adler, supra. Aside from this, in both Postal Telegraph and Carr the courts appear to have been mainly concerned with the public policy of the state against restrictions on alienation. However, in Cragmere we held:
"Plaintiff urges * * * and further asserts that, in any event, language purportedly restricting the use of land must be strictly construed. * * * But both of these principles are merely in the nature of constructional guides; after giving them due weight, we find the considerations mentioned above, pointing the other way, to overbalance them. Considering the clear purpose of the parties herein, we discern no ambiguity in the covenant under consideration." (65 N.J. Super., at p. 325)
We find neither Lucente v. Davis nor Field v. Mills to be apposite. In Field v. Mills the question involved was whether a covenant against underletting was broken by an assignment of the lease.
Construing the covenant here involved in the light of the circumstances under which it was written, and keeping in mind the purposes of the parties in thus contracting with one another, Cragmere, supra, at p. 325, it becomes apparent that the landlord was restricting Renee to the operation of a dry cleaning and pressing establishment as part of the shopping center. It could not assign or sublet without the landlord's consent. It could not operate its store as and when it pleased, but was bound by a covenant that:
"Tenant shall during normal business hours, during the term of this Lease, continuously use the demised premises for the purpose stated in this Lease, carrying on therein Tenant's business undertaking diligently, assiduously and energetically. Tenant shall maintain on the premises a substantial stock of goods, wares and merchandise and equipment, adequate to assure successful operation of Tenant's business. Tenant shall keep the premises open and available for business activity therein during all usual days and hours for such business in the vicinity and during such periods and hours as are customary in shopping center except when prevented by strikes, fire, casualty or other causes beyond Tenant's reasonable control. Tenant shall *195 keep the premises open at least 6 days each week and until 9 P.M. on Thursday and Friday. Tenant shall include the address and identity of its business activity in the demised premises in all advertisements made by Tenant in which the address and identity of any other local business activity of like character conducted by Tenant shall be mentioned, and shall not divert elsewhere any trade, commerce or business which ordinarily would be transacted by Tenant in or from the demised premises."
In exchange, Renee bargained for and became entitled to not only the landlord's agreement not to lease to a competing business, but freedom from competition within the prescribed area. The clear purport of the covenant was Renee's freedom for the duration of the lease from the financial hazard of competition to the extent that such protection could be provided by defendants. Cf. Cragmere, supra, at p. 327.
Here, as noted, defendants were precluded from leasing out any store within the prescribed area as a dry cleaning and pressing establishment. They stipulated that it was the intention of the parties at the time of the lease that the restriction of 500 feet should apply even though Rickarjef was the then owner of the premises involved. They could not circumvent their obligation by selling a portion of the premises lying within the restricted area without making provision for continued compliance with their obligation. Admittedly, they made no such provision. On the contrary, W.M.S. Co., the buyer, received no notice whatever of the existence of the covenant. If, therefore, the premises leased to Norge Villa by W.M.S. Co. are within the 500-foot area, defendants may be held liable in damages to plaintiff. Since the parties are in disagreement as to the distance involved, it is for the trier of the facts to determine the issue.
We perceive no merit to the additional point raised by defendants. Paragraph 39, supra, was not intended to  and did not  release the respective defendants from responsibility to plaintiff upon the sale of the leased premises to Avon Enterprises. The paragraph in question was clearly intended to apply to the obligations owing by the lessor, Ivy Hill Stores, vis-a-vis the premises of which plaintiff's store was a part *196 (parcel A). Avon Enterprises thereby became obligated to perform the covenant contained in paragraph 51, insofar as it referred to parcel A, but defendants continued liable under the covenant with reference to Rickarjef's parcel.
The judgment of the Chancery Division is accordingly reversed and the case remanded for the purpose of determining whether the premises sold to W.M.S. Co. and thereafter leased in competition with plaintiff are within the restricted area and, if so, the extent of plaintiff's damages for breach of the covenant referred to.