[L. A. No. 3419. Department One. January 7, 1915.]

C. M. STAUB SHOE COMPANY (a Corporation), Appellant, v. JAMES W. BYRNE, Respondent.

LEASE—CONSTRUCTION—PROVISIONS FOR TERMINATION IN EVENT OF DAMAGE BY FIRE—PREMISES RENDERED "WHOLLY UNFIT FOR OCCUPANCY."—A lease of a part of a building for a retail shoe store expressly provided that the lease should terminate upon the occurrence of any one of three contingencies: (1) if "the building or premises are destroyed by fire or other action of the elements"; (2) or "if the building or premises are partially destroyed so as to render the premises demised wholly unfit for occupancy"; (3) or "if

they shall be so badly injured that they cannot be repaired within sixty days after the happening of the injury." The next clause provided "that if said premises shall be repairable within sixty days from the happening of said injury, then said rent shall not run or accrue after such injury and while the process of repairs is going on, and the lessor shall repair the same with all reasonable speed, and the rent shall recommence immediately after said repairs shall be completed; but if said premises shall be so slightly injured by fire or the elements as not to be rendered unfit for occupancy, then the said lessor agrees that the same shall be repaired with reasonable promptitude, and in that case the rent accrued or accruing shall not cease or terminate." *Held,* that it was reasonably practicable to construe the lease so that effect could be given to every part of it; that, properly construed, the lease terminated upon the happening of either of the three contingencies specifically mentioned, including the contingency of a partial destruction of the demised property which rendered it *wholly* unfit for occupancy, irrespective of whether it could or could not be repaired within sixty days; and that the last clause was intended to apply to the case where the premises might be damaged to such limited extent as to prevent or greatly hamper the conduct of business, while not requiring the tenant to vacate while repairs were being made, thus rendering the premises "unfit for occupancy" within the meaning of the clause relieving the tenant from the payment of rent during the period devoted to repairs, but not damaged to an extent which would terminate the lease by rendering the premises "wholly unfit for occupancy."

ID.—PROVISIONS TERMINATING LEASE NOT DECLARING FORFEITURE—CONSTRUCTION AGAINST LESSOR.—In construing such lease there is no basis for applying the rule of strict interpretation against conditions involving forfeiture. The clause terminating the lease in certain contingencies does not declare a forfeiture. It fixes events, having no relation to any act or default of the parties, upon which it is agreed that the lease shall end. Such clause should not be interpreted against the lessor.

ID.—RENT PAYABLE IN ADVANCE—CANNOT BE RECOVERED UPON DESTRUCTION OF PREMISES.—A tenant who has taken possession of the leased premises and paid his rent, or a part of it, in advance, as required by the terms of the lease, cannot, in the absence of any covenant in the lease, recover the rent so paid in case of the destruction of the premises by fire without any fault of either party to the lease. This is true even though, by the terms of the lease, or under a statute, the destruction of the premises terminates the lease.

ID.—PROVISION FOR PAYMENT OF RENT ONLY TO TIME OF SURRENDER—NOT COVENANT TO REPAY RENT PAID IN ADVANCE.—A provision of the lease, that the lessee shall, upon the happening of certain specified damages by fire terminating the lease, "surrender said premises . . . and shall pay rent within this term only to the time of such sur-

render," is not a covenant to repay, in whole or in part, any install-
ment of rent which had become due and been paid prior to the fire.
It merely declares that the tenant shall not be called upon to pay
any further rent after surrendering the premises.

ID.—SURRENDER NECESSARY TO CREATE RIGHT TO REPAYMENT.—If such
provision gave the tenant any right to the repayment of rent which
had been paid in advance, the right of repayment would arise only
upon the tenant's surrender of the premises.

APPEAL from a judgment of the Superior Court of
Los Angeles County and from an order refusing a new trial.
Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Williams, Goudge & Chandler, for Appellant.

Denis & Lowenthal, and O'Melveny, Stevens & Milliken,
for Respondent.

SLOSS, J.—On March 9, 1910, Mrs. Margaret Irvine was
the owner of a store and office building situated at the north-
west corner of Broadway and Third streets in the city of Los
Angeles. On that day she executed a lease of the corner store
and basement in said building to the plaintiff for the term
of five years commencing on the first day of January,
1911, at a monthly rental of one thousand two hundred and
fifty dollars, payable in advance on the first day of each
month. On February 16, 1911, the building and the premises
occupied by the plaintiff were damaged and injured by fire.
Prior to the last mentioned date the defendant James W.
Byrne had succeeded to the interest of the lessor in the lease.
This action is the outgrowth of a controversy arising over
certain provisions of the lease relative to the effect of destruc-
tion of or injury to the premises by fire or other cause. The
plaintiff contended that it was entitled to remain in posses-
sion of the store and basement under its lease. The defend-
ant's position was and is that the lease was terminated at the
date of the fire, and he has excluded the plaintiff from the
possession and leased the premises to another tenant. The ac-
tion was brought to recover the sum of forty-five thousand
dollars alleged to be the value, at the date of the fire, of the
lease and the value of the use and occupation of the premises

during the remainder of the term. The complaint also seeks to recover the sum of $580.40, being the proportion of the monthly rent representing the part of the month of February elapsing after the fire. The case was tried without a jury, and judgment went in favor of the defendant. The plaintiff appeals from the judgment and from an order denying its motion for a new trial.

The case turns largely upon the construction of the fourth clause of the lease. This clause reads as follows:

"If, during the term of this lease, the building or premises are destroyed by fire, or other action of the elements, or partially destroyed so as to render the premises demised wholly unfit for occupancy, or if they shall be so badly injured that they cannot be repaired within sixty days after the happening of the injury, then this lease shall cease and become null and void from the date of such damage or destruction, and the lessee shall immediately surrender said premises, and all interests therein, to said lessor, and said lessee shall pay rent within this term only to the time of such surrender; and in case of destruction or partial destruction as above mentioned, the said lessor may re-enter and re-possess said premises discharged of this lease, and may remove all parties therefrom; and if said premises shall be repairable within sixty days from happening of said injury, then said rent shall not run or accrue after such injury and while the process of repairs is going on, and the lessor shall repair the same with all reasonable speed, and the rent shall recommence immediately after said repairs shall be completed; but if said premises shall be so slightly injured by fire or the elements as not to be rendered unfit for occupancy, then the said lessor agrees that the same shall be repaired with reasonable promptitude; and in that case the rent accrued and accruing shall not cease or determine. In no case shall the lessee be entitled to compensation or damages on account of any inconvenience or annoyance, or destruction by fire or earthquake or by other actions of the elements or by reconstruction or repair of any portion of said building; nor for any damage to or loss of property in said premises from any cause."

The complaint alleges that the leased premises were repairable and could have been repaired within the period of sixty days after the said sixteenth day of February, 1911; that the defendant did not repair said premises within said period of

sixty days and did not use reasonable or any diligence in that behalf. The answer denies these allegations, and, further, alleges that the demised premises occupied by plaintiff were destroyed and were rendered by said fire wholly unfit for occupancy. Upon all these issues the findings were in favor of the defendant.

One of the conclusions of law was that by reason of the fact that the building and premises were partially destroyed by fire so as to render the demised premises wholly unfit for occupancy said lease became and was terminated. A like conclusion was drawn from the fact that the premises were so badly injured that they were not repairable and could not be repaired within sixty days after the happening of the said injury by fire. The court further concluded that the defendant was entitled under the terms of the lease to retain the sum of $1250 paid in advance for the month of February, 1911.

With respect to the main cause of action, i. e., that based upon the defendant's refusal to permit the plaintiff to occupy the premises during the remainder of the term, the appellant contends that under a proper construction of the lease the tenancy did not terminate by a mere partial destruction rendering the premises wholly unfit for occupancy, but that such result followed only if the premises were so badly injured that they could not be repaired within sixty days. Unless this position be well taken, the appellant's claim that it was wrongfully ousted from the premises must fail, since it cannot be doubted that the evidence amply warranted the finding that the fire rendered the premises wholly unfit for occupancy. If, on the other hand, the fact so found did not terminate the tenancy, the plaintiff must still overcome the conclusion that the lease ceased by reason of the fact that the premises were not repairable within sixty days. In this regard the appellant contends with great vigor and earnestness that the evidence does not support the finding that the premises could not have been repaired within the time specified.

The first subject of inquiry, then, is the proper interpretation of the clause defining the conditions which may terminate the lease. By the clear and express language of the opening part of this clause, it is provided that the lease shall cease and become null and void upon the occurrence of any one of three contingencies: (1) if ''the building or premises are destroyed by fire or other action of the elements''; (2) ''if the building

or premises are partially destroyed so as to render the premises demised wholly unfit for occupancy"; or (3) "if they shall be so badly injured that they cannot be repaired within sixty days after the happening of the injury." Up to this point the clause is expressed in plain and simple words, and there is no room for the play of rules of interpretation. The appellant contends, however, that the later provisions of the clause so modify and limit the effect of the portion just referred to as to destroy the second contingency outlined and to terminate the lease in the case of partial destruction or injury only in the event that the premises are not repairable within sixty days after the happening of the injury. This claim is based upon the following provision "that if said premises shall be repairable within sixty days from the happening of said injury, then said rent shall not run or accrue after such injury and while the process of repairs is going on and the lessor shall repair the same with all reasonable speed and the rent shall recommence immediately after said repairs shall be completed; but if said premises shall be so slightly injured by fire or the elements as not to be rendered unfit for occupancy, then the said lessor agrees that the same shall be repaired with reasonable promptitude, and in that case the rent accrued or accruing shall not cease or terminate." The argument is that the provision last quoted obviously contemplates the liability of the lessor to repair and the right of the tenant to continue under his lease in either of two events, (1) if the injury or the necessary repair work be so extensive as to prevent occupancy by the tenant, in which case rent shall be remitted during the time of repair, or (2) if the injury be so slight as not to render the premises unfit for occupancy, in which case the obligation to pay rent shall continue during the period of repair. It being provided, therefore, that the right of the tenant shall continue even though there be an injury rendering the premises unfit for occupancy, there is presented, it is urged, a conflict between the later and the earlier parts of the clause and the conflict should be resolved in favor of the tenant by holding that no partial injury shall terminate the lease unless the premises be injured to such an extent that they cannot be repaired within sixty days. The necessary effect of this contention is to deny all meaning to the provision for a termination in the event of a partial destruction rendering the premises demised wholly unfit for occupancy, for, under

the construction thus suggested, the only event (short of a total destruction of the building or premises) which would terminate the lease would be an injury not repairable within sixty days—an event which is provided for in separate and distinct terms. It is, of course, unnecessary to cite decisions in support of the fundamental rule of interpretation requiring effect to be given to every part of a contract if reasonably practicable. (Civ. Code, sec. 1641.) Unless the later provisions relied on by the appellant are fairly susceptible of no interpretation other than one which will totally destroy an independent provision of the contract, they should not be interpreted in the manner suggested. We are satisfied that it is "reasonably practicable" to give effect to every part of the fourth clause, without doing violence to the intent of the parties as manifested by the language used by them. The opening part of the clause contemplates three different kinds or degrees of destruction or damage: 1. A total destruction (which is not in question here) ; 2. A partial destruction or damage rendering the premises wholly unfit for occupancy; and, 3. An injury which cannot be repaired within sixty days. Since these three situations are stated in terms connected by the disjunctive particle "or," the three contingencies specified are to be understood as representing alternatives, each of which operates independently of the other two. An injury which cannot be repaired within sixty days may or may not render the premises wholly unfit for occupancy. But since the lease specifies the two conditions alternatively as events terminating the lease, the natural meaning of the clause is that a damage rendering the premises wholly unfit for occupancy will terminate the lease, regardless of the time necessary for repair, and that an injury that cannot be repaired within sixty days will have the same effect, whether the injury be one that renders the premises wholly unfit for occupancy or not.

There remains a fourth contingency, upon the occurrence of which the lease is not determined, although there has been an injury to the premises, i. e., if the premises are not rendered wholly unfit for occupancy, and if they can be repaired within sixty days. The later clause dealing with the abatement of rent during the period of repair deals with this contingency. The lessor is required to repair with all reasonable speed, and no rent is to be paid during the period of repair unless the injury is so slight that the premises are not rendered unfit for

occupancy. This provision does, no doubt, contemplate the possibility of a continuance of the lease even though the premises have been rendered unfit for occupancy. Is there a necessary conflict with the earlier provision for a termination in the event of partial destruction rendering the premises "wholly unfit for occupancy?" We think not. The word "wholly" is not found in the later provision, and we must assume that, in the minds of the parties, this word had some meaning and purpose. "Wholly unfit for occupancy" *is not the same* thing as "unfit for occupancy." The rational conclusion is that the parties foresaw the possibility of injuries affecting the availability of the premises for occupancy in three different degrees: 1. An injury which would make them totally unfit for occupancy; 2. An injury which would seriously interfere with their enjoyment and occupancy; and, 3. One which was so slight as to create virtually no impediment to their occupancy. The premises were to be used, and were used, as a retail shoe store. The parties were contracting with reference to occupancy for such use. The premises might be damaged to such an extent as to prevent or greatly hamper the conduct of business, while not requiring the tenant to vacate while repairs were being made. This would render the premises "unfit for occupancy" within the meaning of the clause relieving the tenant from the payment of rent during the period devoted to repairs, but would not terminate the lease by rendering them "wholly unfit for occupancy."

This construction, as we have already suggested, gives effect to every provision of the contract and does not distort any word or phrase from its fair meaning. So interpreted, the fourth clause makes entirely reasonable provision for the various contingencies that might result in case of fire or other injury to the building or premises. There is here no basis for applying the rule of strict interpretation against conditions involving forfeiture. (Civ. Code, sec. 1442.) The clause terminating the lease in certain contingencies does not declare a forfeiture. It fixes events, having no relation to any act or default of the parties, upon which it is agreed that the lease shall end. The further argument of appellant that the clause should be interpreted against the lessor is equally inapplicable. The meaning of the lease is of course to be ascertained in the light of conditions existing when it was

made. Whatever it meant then it means now. There is no ground for saying that the provision terminating the lease in the event of damage rendering the premises wholly unfit for occupancy was for the benefit of the lessor rather than the lessee. So far as could be known in advance, it might be highly advantageous to the tenant to be released if the premises should be rendered wholly unfit for occupancy.

The interpretation put by us upon the lease dispenses with the necessity of any inquiry into the sufficiency of the evidence to sustain the finding that the premises were not repairable within sixty days. Nor is it important to examine the finding, also assailed by appellant, that the lessor used reasonable diligence in repairing the premises. Whether the premises could be repaired within a given time, or whether they were repaired diligently or at all, does not concern the appellant if his lease ended on the day of the fire by reason of the fact that the premises had been rendered wholly unfit for occupancy. It is claimed that the court erred in certain rulings on the admission of evidence, but the evidence involved all bore on the issue of the time within which the premises could have been repaired. If error was committed in any of these rulings, it was not prejudicial.

The only other point raised by appellant is that it should have been given judgment for a portion of the February rent paid by it in advance. The fire occurred on the sixteenth day of the month. The fire clause, which we have already quoted in full, provided that upon the occurrence of any of three events, the "lease shall cease and become null and void from the date of such damage or destruction, and the lessee shall immediately surrender said premises, and all interests therein, to the lessor, and said lessee shall pay rent within this term only to the time of such surrender." It is settled in this state that a tenant who has taken possession of the leased premises and paid his rent, or a part of it, in advance, as required by the terms of the lease, cannot, in the absence of any covenant in the lease, recover the rent so paid in case of the destruction of the premises by fire without any fault of either party to the lease. (*Harvey* v. *Weisbaum*, 159 Cal. 265, [Ann. Cas. 1912B, 1115, 33 L. R. A. (N. S.) 540, 113 Pac. 656].) And this is true even though, by the terms of the lease, or under a statute, the destruction of the premises terminates the lease. The appellant was not, therefore, en-

titled to repayment of a proportion of the February rent unless the lease contained a covenant for such repayment. The appellant relies on the provision that the lessee shall, in certain events, "surrender said premises . . . and said lessee shall pay rent within this term only to the time of such surrender." This is not a covenant to repay, in whole or in part, any installment of rent which had become due and been paid prior to the fire. It merely declares that the tenant shall not be called upon to pay any further rent after surrendering the premises. But, if the language relied on could be given the effect claimed for it, the right to repayment would arise only upon the tenant's surrender of the premises. There is neither allegation, proof nor finding that the plaintiff surrendered the premises at any time which would entitle it to a refund of any part of the February rent. In any view, the burden was on the plaintiff to allege and prove such surrender.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Angellotti, C. J., concurred.

Hearing in Bank denied.