[Civ. No. 7888. First Appellate District, Division Two.—August 31, 1931.]

JAMES A. GIDDENS, Appellant, v. H. J. KROGH et al., Respondents.

C. Huntington Jacobs, Arthur P. Shapro, A. L. Crawford and Milton E. Wright for Appellant.

John E. Springer and Avery J. Howe for Respondents.

SPENCE, J.—Plaintiff sought to recover the sum of $1,000 deposited by his assignors with defendants as lessors

under the terms of a lease. The cause was tried without a jury and from a judgment in favor of defendants, plaintiff appeals.

The lease, executed on May 1, 1926, by defendants and Michael McGuinn and Robert W. Lawton, plaintiff's assignors, was for a term of five years commencing July 1, 1926. It covered a garage and service station and provided for a monthly rental of $250. It further contained the following provision: "Mr. Michael McGuinn has deposited with the lessors the sum of One thousand ($1,000) dollars, the receipt of which is hereby acknowledged. Said money is not deemed any part of the rental herein reserved, but is a flat consideration and compensation to the lessors for entering into this lease, but said lessors agree that if the lessees shall well and truly perform all of the covenants and conditions herein contained, and continuously occupy the said premises for the period herein reserved, then said money shall be returned to said Michael McGuinn at the termination of this lease, whether said termination be by the expiration of the lease term or by mutual agreement of the parties hereto, whether by assignment or otherwise, as long as the lessee shall not be in default in the performance of the covenants herein created. The lessors will pay the said Michael Guinn six per cent per annum payable monthly, on the first day of each and every month, on said deposit."

On July 1, 1927, the lease was assigned to plaintiff with the consent of defendants. Shortly thereafter plaintiff refused to pay the $250 per month as rental and stated that "he would walk out" if the rent was not reduced. The parties then orally agreed upon a reduction of the rent from $250 to $200. The latter amount was paid by plaintiff up to March 11, 1929. Shortly prior to that date plaintiff told defendants that if the rent was not reduced to $150 per month "he would have to walk out, he could not make it". Defendants refused to make a further reduction but it was finally agreed that the lease should be terminated and that defendants would purchase certain equipment from plaintiff. The parties entered into a written agreement on March 11, 1929, the pertinent portion of the agreement reading as follows: "The above lease on Southgate Garage & Service Station, is hereby mutually and agreeably terminated this date, and the Lessor, H. J. Krogh, further agrees

to pay the Lessee, J. A. Giddens, the sum of Five hundred dollars ($500.00) for the personal property of the Lessee, J. A. Giddens, which is listed below, and now located on said premises: . . .'' After unsuccessfully endeavoring to raise the $500, defendants on April 10, 1929, gave plaintiff an installment note for that amount, payment of which was finally completed on August 10, 1929. Neither during the negotiations of the parties nor at the time they signed the agreement providing for the termination of the lease and the purchase of the equipment was any mention made of the $1,000 deposit. Nor was it mentioned thereafter at the time of signing the $500 note or any other time until September, 1929, about one month after the last installment on the note had been paid. The original lease provided for interest on the $1,000 payable monthly. This interest was paid by defendants up to February 1, 1929, but not thereafter and no demand was subsequently made for interest or for principal until written demand upon defendants was made by plaintiff's attorney on September 10, 1929.

It appears to have been conceded in the trial court that any rights which appellant's assignors had with respect to the deposit passed to appellant on the assignment of the lease. It was further conceded that appellant and his assignors had performed all of the conditions of the lease up to the time of the agreement of March 11th, despite the fact that for some time prior thereto, appellant had paid a smaller rental than that provided in the written lease under an oral agreement between the parties. In the trial court and on this appeal appellant had contended that the agreement of March 11, 1929, constituted a termination within the meaning of the original lease entitling him to the return of the $1,000 deposited with respondents. The record discloses that the trial court construed the agreement with reference to the surrounding circumstances and the course of dealing between the parties and concluded and found that the agreement was understood and intended to be a termination of all further rights and liabilities of the parties under the lease including the provision above quoted. In our opinion the trial court properly construed the agreement.

Appellant argues that the language of that agreement is clear and free from doubt and "there therefore was

no room nor any need for determining the intent of the parties by any other criterion than the language of the agreement itself". Standing alone the language of the agreement terminating the lease does appear perfectly clear but ordinarily such an agreement would terminate every right and liability of the parties under the lease. But the doubt which arises in the meaning of that language is caused by the very provision of the lease under which appellant claims to be entitled to the return of the money. Reading the lease and the agreement terminating the lease together, it is doubtful whether the latter was intended to terminate all of the rights and liabilities of the parties under the lease or whether it was intended to terminate all of those rights and liabilities save and except those claimed under the provision relating to the $1,000 deposit. Under such circumstances it was proper for the trial court to look beyond the terms of the instrument in arriving at the intention of the parties (6 Cal. Jur., p. 252, sec. 163]; and to consider the surrounding circumstances (Civ. Code, sec. 1647; Code Civ. Proc., sec. 1860; 6 Cal. Jur., p. 294, sec. 180), and the course of dealing between the parties showing the meaning which the parties themselves placed upon the agreement. (*Cabrera* v. *Thannhauser & Co.*, 183 Cal. 604, 616 [192 Pac. 45]; *Mitau* v. *Roddan*, 149 Cal. 1, 15 [6 L. R. A. (N. S.) 275, 84 Pac. 145].)

The evidence shows that on the second occasion when appellant threatened to abandon the lease and "walk out" he was refused a second reduction in the rental. At that time the lease had twenty-six months to run and appellant's business was not a paying enterprise even with the rental at the reduced figure theretofore orally agreed to by respondents. He sought to terminate the lease and to sell his equipment to respondents and after several days had elapsed respondents consented and signed the agreement of March 11th. Appellant testified that before respondents had signed the agreement Mr. Krogh stated that "he would go down and get the money and bring it back and pay me and relieve me", but as Mr. Krogh was unable to get the money an installment note for $500 was finally accepted. Appellant vacated the premises and ceased paying rent. Respondents ceased paying interest on the $1,000. In speaking of the

transactions to one of the witnesses appellant said "that he did not sell out; that he turned it back to Mr. Krogh". It is highly significant that no mention of the $1,000 deposit was made during any of the dealings of the parties over a period of several months. Under the evidence the trial court correctly concluded that the entire course of dealings between the parties both before and subsequent to the signing of the agreement showed that they intended that the execution of the agreement and the payment of $500 therein provided should terminate all of their obligations under the lease. Referring to the importance in cases of doubtful construction of the practical interpretation of agreements by parties as shown by their course of dealings, the court said in *Mitau* v. *Roddan, supra,* at page 15, "Parties are far less liable to have been mistaken as to the intention of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them seeks a construction at variance with the practical construction they have placed upon it. The law, however, recognizes the practical construction of a contract as the best evidence of what was intended by its provisions."

Appellant further contends that the provision of the lease relating to the $1,000 deposit is invalid and that he is entitled to recover regardless of any failure to comply with the conditions of the lease and without reliance upon the termination agreement. He cites and relies upon *Green* v. *Frahm,* 176 Cal. 259 [168 Pac. 114]; *Knight* v. *Marks,* 183 Cal. 354 [191 Pac. 531]; *Redmon* v. *Graham,* 211 Cal. 491 [295 Pac. 1031]. Each of these cases involved a clause providing for a deposit as security and further providing for a forfeiture of the deposit in case of breach. These cases are authority for the proposition that the portion of the clause providing for a forfeiture is invalid; but as pointed out in *Green* v. *Frahm, supra,* at page 262, that portion of the clause providing for a deposit as security is valid. Even if the clause in the present lease is construed as one providing for a deposit as security for the lease and not as a "flat consideration and compensation to the lessors for entering into this lease", the clause is nevertheless valid to that

extent under the authorities cited by appellant. We therefore find no merit in this contention.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.