[Civ. No. 4106.   Fourth  Dist.   Jan. 18, 1950.]

J. R. THOMPSON et al., Appellants, v. J. H. SWIRYN et al., Respondents.

Ernest W. Pitney and Leland S. Davis for Appellants.

Wing, Wing & Brown for Respondents.

GRIFFIN, Acting P. J.—This is an appeal by plaintiffs from a judgment on a verdict of a jury in favor of the defendants on their complaint, and for the defendants on their counterclaim in the sum of $2,800.

This action is one for unlawful detainer and for forfeiture of the lease under which the defendants occupied the Beaumont Inn in Riverside County. In April, 1945, E. Tharalson, a real estate broker, owned the inn. He was endeavoring to lease it. Tharalson had purchased that hotel in February of the same year and had previously borrowed money on it, secured by a trust deed on the property and a mortgage on the hotel equipment from the plaintiffs in this action. The plaintiffs and Tharalson had known each other for several years. Tharalson had represented plaintiffs professionally on prior occasions. In April, defendants contacted Tharalson, through one of his brokers with whom he had listed the prop-

erty, and they had some oral agreement as to the terms of purchase and prepared a lease on a standard form. This lease was taken by them to an attorney who had represented Tharalson for many years and who also had been plaintiffs' attorney for several years. That attorney was dissatisfied with the form of the lease as drawn. He prepared a rough draft of a proposed lease which was given to defendants. They consulted their lawyer about it. After consultation between the attorneys Tharalson's attorney prepared the lease which is the subject of this action. It provides in part, that the lessor, in consideration of the sum of $9,000, leases to the lessee the inn, together with the furniture and furnishings therein. The term of the lease runs for 10 years commencing May 1, 1945, and ending April 30, 1955. Under paragraph three the lessee agrees to pay as rent the total sum of $99,001 for the full term aforesaid, payable in installments of $900 per month for the first ensuing 110 months of said term and the sum of $1.00 per month for the next ten months thereof. Then in parentheses is the following clause: "The sum of Nine Thousand Dollars ($9,000.00) paid upon the execution of this instrument is not part of the rental above provided." The nature of this $9,000 deposit is the main issue in this action. The lease then provides that the first month's installment shall be paid on the signing of the lease. Then follows in paragraph 22 a provision that if, during the term of the lease, the premises shall be destroyed or damaged by fire, then, providing lessee shall not have defaulted in any of the provisions thereof, lessor, or his assigns, shall proceed to repair or rebuild the premises, and then provides, however, that at the option of the lessor or his assigns he shall be relieved of any obligation to repair or rebuild the same "and be entitled to terminate this lease by the payment to lessee of the sum of Nine Thousand Dollars ($9,000.00), if said disaster shall occur prior to July 1, 1954 (less any moneys, if any, as shall then be due or shall have accrued to the lessor to the date of such disaster), but if such disaster shall occur after July 1, 1954, then by the payment to the lessee of an aggregate sum which shall be an amount equal to a sum computed on the then unexpired term hereof at the rate of Nine Hundred Dollars ($900.00) per month (thirty days) less any moneys then due or accrued to lessor." It is conceded that only the sum of $6,000 was actually paid by the lessee to the lessor and that the total sum of $9,000 mentioned in the lease was not actually paid.

On May 1, 1945, a supplemental agreement was entered into between the same parties agreeing that the lessor may sell the demised premises subject to the lease and reserving the right to show it to prospective purchasers. Lessor further agreed that during the term of the lease and prior to July 1, 1954, if the lessee should be precluded from using and operating pinball and slot machines then in use on the premises and lessee should suffer any reduction of revenue, then the monthly rental provided to be paid under the lease during any such period would be reduced during that period to the extent of one-half of the previous monthly average of revenue therefrom, not to exceed $200. It appears that on May 1, 1945, defendants went into possession of the demised premises; that on May 4, Tharalson assigned the lease to the plaintiffs in this action and plaintiffs became the owners of the hotel by grant deed dated the same day, and also obtained a bill of sale for furniture, furnishings and fixtures.

On January 1, 1947, plaintiffs entered into another supplemental agreement with defendants, because of certain disputes arising between them as to the amount of rentals theretofore accrued and owing, with respect to certain fixtures in the cafe that had been removed for the purpose of replacing them with new fixtures. Accordingly, the lease was modified to the satisfaction of the parties in reference to the fixtures and it was agreed on account of the rentals that had accrued under the lease, as modified by the supplemental agreements, the defendants would pay plaintiffs $300 in cash as a settlement on account of rent due for the period ending December 1, 1946. They further agreed that the supplemental agreement executed on May 1, 1945, would be canceled as of that date and in lieu thereof they agreed that the rental of $900 per month provided in the original lease should be reduced to $800 per month from January 1, 1947, during the time the agreement was in effect or until the lessee "shall acquire a license for the sale of spirited liquors." The amendments to the original lease or supplement agreements are not in question.

After taking possession, defendants installed furnishings and fixtures of the approximate value of $6,000. During the late fall of 1947, they found themselves in financial difficulties and unable to meet the payments due. They endeavored, unsuccessfully, to have the rental reduced to a figure that would enable them to operate the hotel, and advised plaintiffs that unless the rental were reduced plaintiffs could take the hotel back, as they could not continue, financially. In the

early part of 1948, plaintiffs were endeavoring to sell the hotel and they desired to have defendants remain as it would facilitate a sale. Defendants paid the rent for the month of January, 1948, but paid none thereafter, and cooperated with plaintiffs in showing the hotel to prospective buyers. In April, 1948, unknown to defendants, plaintiffs entered into a written contract to sell the hotel. During that month, there were numerous conferences between the defendants, plaintiffs and others in an endeavor to settle their respective rights. Defendants claim that it was then, for the first time, that plaintiffs refused to credit them with the agreed deposit of $6,000 actually paid, and that accordingly plaintiffs refused to pay to defendants the difference between the deposit and the rental due. It was stipulated at the trial that the rental due at the time the action was brought was $3,200.

During these final conferences the question arose as to the amount that should be paid to defendants for the furniture and furnishings installed by them, which the new buyers desired to purchase. No agreement was reached. Plaintiffs immediately filed this action in unlawful detainer for forfeiture of the lease and for treble rents. They set forth the lease and its several amendments, demanded possession, claimed a balance of $3,300 rent due and owing from January 1, 1948, to June 1, 1948, demanded delivery of possession of the premises, including the furniture and furnishings contained therein, declared a forfeiture of the lease and agreements under which the defendants held possession, and in addition sought reasonable attorney's fees, as provided in the lease, in enforcing the covenants of the agreement in the sum of $750.

Defendants answered, admitted many of the allegations contained in the complaint and denied others, alleged that they did not hold possession of the premises since they had theretofore surrendered possession of the property and of the personal property situated therein to the plaintiffs; alleged that they never refused to surrender possession of the premises and that ever since January 1, 1948, they were willing to surrender possession upon the request of the plaintiffs and so informed them on numerous occasions, and that plaintiffs wanted defendants to remain in possession for the reason that the plaintiffs were endeavoring to sell the property by reason of the fact that such retention would make the property more salable if occupied by them. By way of counterclaim they set up the provisions of the lease in reference to the $9,000 retained by the lessor and claimed that it was understood by all

the parties to the original lease and by the plaintiffs that such deposit was for the faithful performance of the lease by these defendants and that it appears from the lease itself and the evidence surrounding its making that the deposit was made only for the purpose of securing performance of the terms of the lease. By the counterclaim defendants seek the return of. $9,000 less the accrued rental due under the lease.

The case went to trial upon the issues thus framed. Strenuous objection was made by plaintiffs to the admission in evidence of the testimony of the several parties surrounding the making of the original lease in respect to the purpose for which the $6,000 was paid to the original lessor. The trial court overruled the objection and admitted the testimony. It is the ruling on this objection that plaintiffs contend is in error. Several cases are cited in support of the objection, such as *Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13]; *Watson* v. *Fisher*, 79 Cal.App. 621 [250 P. 577]; *Carr* v. *King*, 24 Cal.App. 713 [142 P. 131]. The jury returned a verdict, finding for the defendants on the complaint of plaintiffs and found that defendants were entitled to recover nothing on their counterclaim. Before the verdict was received and recorded, counsel for defendants moved to "make the verdict formal and regular" because, as he stated: "It appears to me that the verdict, found as it is, would have to find something in behalf of the counterclaim." After some argument the court ordered the jury to "reconvene and reconsider their verdict" and by stipulation the court gave the following instruction:

"You are instructed that you must find:

"Whether the disputed amount was given as a consideration for the execution of the lease, or as a deposit for performance.

"If you find that it was a deposit, you must then find the amount. If you find that the amount paid on the lease, whether it be in the sum of $9,000 or $6,000, was paid as a deposit, then you shall subtract from the $9,000 or the $6,000, the amount of rent in the sum of $3200, from the amount so found, and any further sums you may find the parties intended to be deducted therefrom.

"When you have so determined . . . you shall return with a verdict in a sum which is the difference, whether it be in favor of one party or the other. If you find that the sum paid on the lease was paid as a consideration or bonus for its execution, then you shall find for the plaintiff and against the defendant in the amount of $3200 for rent; and shall you

find that the suit was necessarily instituted by plaintiffs, then you shall in addition find the sum of $750 due as attorneys' fees from defendants to plaintiffs.''

The jury retired for the second time and returned with a verdict in favor of defendants on the complaint of plaintiffs and for the defendants on their counterclaim, in the sum of $2,800. After polling the jury the verdict was recorded as read. Plaintiffs moved for judgment notwithstanding the verdict which was argued and denied.

The main argument here is that the court erred in admitting evidence, over objection, surrounding the facts and circumstances bearing upon the interpretation of the original lease, pertaining to the payment of the $6,000, and the $9,000 provision in the original lease.

The second argument is that there is no evidence to sustain a verdict for $2,800 on the counterclaim. The next is that the evidence is without conflict that $900 of the $6,000 paid was immediately applied to the first month's rent; that the evidence is without conflict that the defendants received $1,978.78 worth of merchandise and stock in trade, for which nothing further was paid and for which they were not allowed credit by the verdict. It was then contended, as a matter of law, that by the very terms of the lease, it should be held that the payment of the $6,000 was a payment in consideration of the execution of the lease and that that amount belonged to the landlord and that under the terms of the lease plaintiffs were entitled, without any offset, to $3,200 plus $750 reasonable attorneys' fees, citing *Wood* v. *Hipwell*, 107 Cal.App. 680 [290 P. 1040]; *Ramish* v. *Workman*, 33 Cal.App. 19 [164 P. 26]; *Weinreich* v. *Vernon*, 109 Cal.App. 60 [292 P. 651]; *Curtis* v. *Arnold*, 43 Cal.App. 97 [184 P. 510], and *Staub Shoe Co.* v. *Byrne*, 169 Cal. 122 [145 P. 1032].

*A-1 Garage* v. *Lange Investment Co.*, 6 Cal.App.2d 593 [44 P.2d 681], summarizes the nature of the monies paid upon the execution of a lease and states that they fall into four classes: (1) advance payment of rent; (2) as a bonus or consideration for the execution of the lease; (3) as liquidated damages; and (4) as a deposit to secure faithful performance of the terms of the lease. When paid under the first class the lessor is entitled to retain the fund on default of the lessee. (*Curtis* v. *Arnold*, 43 Cal.App. 97, 108 [184 P. 510]; *Weinreich* v. *Vernon*, 109 Cal.App. 60, 61 [292 P. 651].) There is no contention that the $6,000 paid by the lessee was to be considered a part of the rental. In fact, the lease particularly states that it was not.

If it falls under the second class, the lessee is denied recovery when the lease has been canceled through his fault. (*Ramish* v. *Workman,* 33 Cal.App. 19, 21 [164 P. 26]; *Wood* v. *Hipwell,* 107 Cal.App. 680, 692 [290 P. 1040].) It is not argued that it falls in the third class. In the fourth class it has been stated that when the sum is deposited merely as security for the performance of the covenants by the lessee, without a penalty or forfeiture clause, the payment is valid to that extent, and the lessee is not entitled to a return of the fund upon a breach of the lease, but the lessor may look to the fund for damages proved and the lessee may recover the balance. (*Green* v. *Frahm,* 176 Cal. 259, 263 [168 P. 114]; *Giddens* v. *Krogh,* 116 Cal.App. 416 [2 P.2d 821]; *Gallagher* v. *McMann,* 119 Cal.App. 688, 690 [7 P.2d 204].)

It is apparently defendants' position that they come within this classification within the meaning of the lease, as disclosed by the evidence and as interpreted by the jury in accordance with the instructions, in order to sustain the judgment in their favor.

The first mention of the original payment in the lease indicates that the lessor "in consideration of the sum of $9,000.00 to him in hand paid, hereby and subject to and upon the following terms and conditions . . . leases . . ." the premises. Then follows the additional agreement to pay the rent. Without considering any other provision of the lease, it would appear that this provision brings plaintiffs within the second clause mentioned and, under the cases cited, no recovery could be had by defendants if they were at fault. The only question is whether section 22 of the lease, pertaining to the disaster clause, created an ambiguity in the terms of the lease, as to the purpose for which this payment of $6,000 was made which would allow the production of evidence *aliunde* and from which the jury might reasonably find that the agreement was that the payment fell in the fourth clause mentioned.

The section provides that if, during the term of the lease, the premises shall be destroyed, and providing lessee is not in default, lessor *or his assigns* shall proceed to repair and rebuild, or at lessor's option, if he does not elect to rebuild or repair he may terminate the lease at any time up to July 1, 1954, by the payment to the lessee of $9,000 ("less any moneys, if any, as shall then be due or shall have accrued to the lessor to the date of such disaster").

It is defendants' argument that this provision clearly indicates that the purpose of the payment was merely a trust

fund or deposit to be held by the lessor or his assigns, and that his duty was to return that amount upon the happening of the event or events indicated. As to this provision, defendants' contention is well grounded.

The case of *Bacciocco* v. *Curtis*, 12 Cal.2d 109 [82 P.2d 385], is somewhat similar and the principle of law involved in the instant action appears to be disposed of by the holding in that case. There, the lease provided that " 'as a bonus for the lessor's execution of this lease, the lessee has paid him *unconditionally* upon execution thereof the sum of five thousand dollars ($5,000.00) ', to be credited on the last five months' rent." (Italics ours.) That lease then contains a provision "that in the event of the termination of the lease by destruction of the building, the lessor 'will pay the lessee so much of the said sum of five thousand dollars ($5,000.00) as shall not theretofore have been so credited upon the rent.' " Another provision was to the effect that the lessor would pay interest upon the $5,000 semiannually. The Supreme Court held that the provisions last mentioned created an ambiguity despite the "unambiguous characterization of the sum as a 'bonus.' " It affirmed the trial court in admitting parol evidence concerning the interpretation of that paragraph, and affirmed a judgment which held that the payment was a deposit for security. The phraseology in the Bacciocco case specifically describing the money as a bonus and stating that it was *unconditionally* paid, is stronger than in the lease before this court. However, it is true that here the lessor did not agree to pay interest. However, that may be explained by the parol evidence which was that only $6,000 was in fact paid, and the rental was increased from the original $750 agreed upon to $900, and the lessor was to pay taxes and insurance amounting to approximately $70 per month.

In *Redmon* v. *Graham*, 211 Cal. 491 [295 P. 1031], there was a deposit of $5,400 made with the lessor by the lessee in addition to the yearly rental. Defendants failed to pay a part of the rent due and plaintiffs gave notice to quit and brought their proceeding in unlawful detainer. The chief question presented was whether the lessors were entitled to retain the deposit of $5,400. The lease provided that that sum was to be paid as security for the performance by the lessee of the covenants contained therein and upon breach the lessor should have the right to keep the same as his own for liquidated damages, and if the lessee performed all of the covenants, that sum should be applied as payment for the last three months'

rent. The court held that the provision for the retention of that sum is a penalty and void within the meaning of section 1670 of the Civil Code. The conclusion was that the money was held as security and that the provision in the lease that the $5,400 should be returned to the lessee upon the accidental destruction of the premises was evidence of that construction and wholly inconsistent with the idea of an absolute payment in advance, with title to the money passing to the lessor. It is true that the lessor, or his assigns, in the present case, had the option to repair or pay the $9,000. It is nevertheless impossible to reconcile the provision in the lease here involved with plaintiffs' contention that the money was paid as a bonus or as consideration for the lease.

As to the facts surrounding the execution of the lease, defendant Swiryn testified, over objection, that previous to its execution he contacted a real estate broker in reference to the leasing of the inn; that Mr. Tharalson took him there and told him that the possibilities of the place were great; that he wanted a deposit of $10,000 "as security of good faith," and wanted $750 a month rent and wanted him to purchase the stock inventory of the cafe and to pay the insurance and taxes which amounted to about $70 a month; that about a week thereafter he went to the office of Tharalson's lawyer, at which time Tharalson repeated this conversation and that upon those terms he was willing to execute a 10-year lease. He then said that he told him he could not raise "$10,-000 as a deposit" but could only raise $6,000; that Tharalson then told him that he would take the $6,000 as a deposit," would make the rent $900 a month, and that he would give him a *paid bill of sale for the stock and inventory* and the lease for 10 years, and that he would, in the lease, give him credit for a "$10,000 deposit"; that he looked up his own lawyer to approve of such a lease when it was prepared; that he subsequently took possession and that a short time thereafter plaintiff Thompson informed him that he was then his landlord, having purchased the property; that he told Thompson of the fact that he was unable to meet the terms of the lease, due to the business recession; that he told Thompson that if he would give him $2,000 cash out of the *"deposit"* he had made under the terms of the original lease he could pay for the three months' delinquent rent and that it would be to his advantage and would help him to sell the lease.

Defendant offered in evidence a rough draft of a purported agreement which he claims he submitted to Thompson in this

respect. These notes recite that the new lease would contain the following agreement: "Period of seven years, starting as of May 1st, 1948 . . . I will agree to a reduction of the *money on deposit* consisting of $9100 cash to $7,000." The difference of $2,100 was to be applied as the back rent for the months of February, March and April "starting me off clear and clean." Defendant's testimony is that when he presented this memo to Mr. Thompson, Thompson said that the plan suggested by the defendant would give him no assurance that defendant could continue to make any money and that therefore "it is not a concrete plan." He then testified that Thompson, however, said he would show his plan to his banker and that Thompson would do everything in his power to have defendant stay on the premises because he wanted an attendant in there and did not want the place empty; that he had a prospect for sale of the inn and wanted defendant to cooperate with him; that he told Thompson that he would not do anything to hurt the sale and that if he sold it they would both be better off and that he was willing to do this as long as it was to his advantage, and that Thompson never said anything to him about paying up the rent that was past due.

It is apparent from this evidence that the defendant regarded the original deposit as a deposit for the security of the performance of the contract and not as consideration for the lease.

Tharalson testified that he told Swiryn that he wanted $9,000 for the business and inventory; that the first month's rent would be $750 a month plus insurance and taxes, or $900 otherwise; that he finally agreed to take $6,000, $5,100 for the inventory and for the business and $900 the first month's rent; that if the slot machines were removed the rent would be reduced; that he told the attorney to draw a lease providing for the $9,000 payment for the business and the inventory and $900 rental per month, and defendant signed the lease.

Plaintiff Thompson testified that when the lease was assigned to him he never received the $9,000 mentioned therein or the $6,000 claimed to have been paid to Tharalson by the defendant.

Upon this conflicting evidence the jury inferentially found, under the instructions given, that the disputed amount was not given as a consideration for the execution of the lease but was given as a deposit for faithful performance. The evidence is sufficient to support this finding.

From a mathematical calculation the jury apparently determined that there was $3,200 due to the plaintiff for accrued rental, and deducted this amount from the $6,000 deposit, leaving a balance of $2,800 due to defendants from said deposit.

■ The next complaint in this connection is that the jury failed to allow plaintiffs credit for the allowed $1,978.84 which was supposed to cover the inventoried items such as meats, supplies, soft drinks, ice cream, etc., which were in the hotel at the time defendant took possession. It is apparent that the jury did not give plaintiffs credit for this item. However, there is evidence that the deposit made by the plaintiff covered the lease *and inventory* and also that the deposit covered a "paid bill of sale for the stock and inventory." There is no evidence that we could find that defendants did not leave an equal amount of stock in the hotel when they left. In support of the judgment we must assume that they did, or that a paid bill of sale should have been delivered covering this stock.

■ The next claim is that the first month's rent was included within the original deposit and credit should be allowed in the jury's verdict for this amount. There is considerable confusion, according to the record, not only as to the amount of this original deposit but as to the item or items that it covered. Apparently, the jury was equally confused and allowed only the difference between the stipulated rent due and the amount of the deposit claimed to have been made by the defendant. We do not feel disposed to disturb the verdict by reason of this fact.

■ The last contention is that there is no privity of contract between plaintiffs and defendants in respect to the initial deposit and that therefore the defendant must recover this sum from the original lessor rather than from his assignee. The parties established contractual relations between themselves with reference to the demised premises by virtue of their execution of the original lease and amendment thereto, and the supplemental agreement and the addenda thereto. Paragraph 13 of the lease provides that if the estate of the lessor shall be conveyed and assigned " . . . then in such instances the same shall operate to thereafter relieve the respective assignor from any further liability hereunder." The assignment transfers to plaintiffs all right, title and interest of the lessors in and to the lease. What consideration passed between the lessor and the assignee is not disclosed. It is the general rule that a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all of the obligations arising from

it so far as the facts are known, or ought to have been known, to the person accepting, and that he who takes the benefit must bear the burden. (Civ. Code, §§ 1589, 3521.)

Since the jury inferentially found that the plaintiffs were not entitled to relief under their complaint, and that the rent stipulated to be due at the time could have been taken from the deposit which was made to secure the performance of the obligations of the lease, the inferential finding that plaintiffs should not have judgment in their favor or attorneys' fees by reason of the institution of the action is supported by the evidence.

Judgment affirmed.

Mussell, J., concurred.

A petition for a rehearing was denied February 10, 1950, and appellants' petition for a hearing by the Supreme Court was denied March 16, 1950. Schauer, J., voted for a hearing.